**Carl OGLESBY, Appellant,**

v.

**The UNITED STATES DEPARTMENT OF the ARMY, et al., Appellees.**

**No. 89–5219.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1990.

Decided Dec. 4, 1990.

James H. Lesar, Washington, D.C., for appellant.

Patricia D. Carter, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Washington, D.C., Asst. U.S. Attys., Dept. of Justice, were on the brief, for appellees.

Before WALD, Chief Judge, MIKVA and RUTH B. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Carl Oglesby is appealing from the dismissal by the district court of his suit against the Department of the Army ("Army"), the Department of State ("State"), the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the National Archives and Records Administration ("NARA"), and the National Security Agency ("NSA") (collectively "the agencies") seeking information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The district court found that all six agency defendants had complied with the FOIA in responding to appellant's requests. *Oglesby v. Department of the Army*, Civ. Action No. 87–3349, Memorandum Opinion ("Mem. op.") at 15, *reprinted in* Joint Appendix ("J.A.") at 281. We do not reach the merits of appellant's claims against the Army, the CIA, the FBI, the NSA and NARA because we find that appellant failed to exhaust his administrative remedies with respect to each of these agencies. Accordingly, we vacate the district court's judgment to the extent that it reached the merits of appellant's claims against these five agencies, and remand with instructions to dismiss appellant's claims against those agencies based on appellant's failure to exhaust his administrative remedies. We find that appellant constructively exhausted his administrative remedies with respect

to his claim against State, but we vacate the district court's order dismissing that claim and remand to the district court to make further findings concerning the adequacy of State's search.

## I. BACKGROUND

Appellant Carl Oglesby is an independent freelance writer, professional journalist, and lecturer. His FOIA requests result from an interest in the life of Reinhard Gehlen, a German General during World War II who served as chief of an international Nazi spy ring that operated throughout Eastern Europe and inside the Soviet Union. At the end of the war, Gehlen allegedly negotiated a secret agreement with the United States under which his organization was reconstituted as an espionage network operating in Europe under U.S. command until it could be restored to West Germany as its official foreign intelligence arm.

In 1985, appellant submitted FOIA requests to six agencies concerning General Gehlen. By letters dated August 21 and September 19, 1985, appellant requested, with minor variations, the following information from each of the six agencies:

(1) records on General Gehlen during the period 1944 through 1956;

(2) records on meetings held at Fort Hunt, Virginia, in the summer of 1945 between General Gehlen and U.S. Army General George Strong and Office of Strategic Services ("OSS") officer Allen Dulles;

(3) records on the U.S. Army's "Operation Rusty," carried out in Europe between 1945 and 1948;

(4) records on post-war Nazi German underground organizations such as "Odessa," "Kamaradenwerk," "Bruderschaft," "Werewolves" and "Die Spinne";

(5) records on the OSS's "Operation Sunrise" carried out in 1945; and

(6) records on Gehlen's relationship with William J. Donovan and Allen Dulles of the OSS, records on Operation Rusty and Gehlen collected by the Central Intelligence Group ("CIG"), and records on the Nazi underground organization "La Arana."

*See* Letter to the CIA Information and Privacy Coordinator from Carl Oglesby (Aug. 21, 1985), *reprinted in* J.A. at 29 (identical letters were sent to the Army, State, and the NSA); Letter to James K. Hall from Carl Oglesby (Aug. 21, 1985), *reprinted in* J.A. at 54 (letter to the FBI); Letter to NARA from Carl Oglesby (Sept. 19, 1985), *reprinted in* J.A. at 72. Appellant also sought a waiver of search and copying fees from each agency pursuant to 5 U.S.C. § 552(a)(4)(A).[1]

In response to appellant's requests, the agencies released a total of 384 pages of documents (many with redactions) but refused to disclose other responsive documents, claiming exemptions under 5 U.S.C. § 552(b)(1), (3), and (7). In addition, the Army, the CIA, NARA, and the NSA

---

**1.** At the time of appellant's request for waiver of search and copy fees, the fee waiver provision allowed for waiver "where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefitting the general public." 5 U.S.C. § 552(a)(4)(A) (1982). In 1986, Congress amended the statute governing fee waivers for FOIA requests and applied the amendment retroactively to all pending requests, which included appellant's. *See* Freedom of Information Reform Act of 1986, Pub.L. No. 99–570, § 1804(b)(1), 100 Stat. 3207, 3207–50; *Larson v. CIA*, 843 F.2d 1481, 1482 (D.C.Cir.1988). The amended fee waiver provision states that:

Documents shall be furnished without any charge or at a charge reduced below the fees established ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii) (1982 and Supp. IV 1986).

Alternatively appellant claims waiver of such fees based on § 552(a)(4)(A)(ii)(II):

[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for· commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media....

5 U.S.C. § 552(a)(4)(A)(ii)(II) (1982 and Supp. IV 1986).

denied appellant's fee waiver requests, although the NSA subsequently agreed to waive fees.

Appellant challenged the denial of his FOIA requests in the district court on the grounds that the agencies performed inadequate searches, the FOIA exemptions claimed by the agencies were not properly supported, and the agencies improperly denied his fee waiver requests. Appellant did not administratively appeal the denial of his requests to the heads of any of the agencies before filing suit in district court. Despite appellant's failure to exhaust administrative remedies, the district court reached the merits of his claims and granted summary judgment for the agencies on all issues. On appeal, the government again raises failure to exhaust as a challenge to his suit, and Oglesby in turn claims that he constructively exhausted his administrative remedies under 5 U.S.C. § 552(a)(6)(C).

The initial question before us is whether appellant must actually exhaust his administrative remedies before seeking judicial review. Briefly summarized, we find that 5 U.S.C. § 552(a)(6)(C) permits a requester to file a lawsuit when ten days have passed without a reply from the agency indicating that it is responding to his request, but that this option lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required. In this case, we find that appellant Oglesby failed to exhaust his administrative remedies with respect to five of the six agencies.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER FOIA

■ Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). The exhaustion requirement also allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review. *See id.* However, absent a statutory provision to the contrary, failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing. *See id.* at 193; *National Labor Relations Board v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1722–23, 20 L.Ed.2d 706 (1968).

■ The statutory scheme in the FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request. After receiving a FOIA request an agency is required to:

(i) determine within ten days (excepting Saturdays, Sundays, and legal public holidays) ... whether to comply with such request and [the agency] shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i), (ii). Courts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the

courts. *See Dettmann v. U.S. Department of Justice*, 802 F.2d 1472, 1477 (D.C. Cir.1986); *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364 (D.C.Cir.1985); *Brumley v. U.S. Department of Labor*, 767 F.2d 444, 445 (8th Cir.1985); *United States v. United States District Court*, 717 F.2d 478, 480 (9th Cir.1983); *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979).

Appellant does not argue that exhaustion of remedies is not required. Rather, he contends that he exhausted his administrative remedies *constructively*, under 5 U.S.C. § 552(a)(6)(C). That section provides:

> Any person making a request to any agency for records under paragraphs (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records....

5 U.S.C. § 552(a)(6)(C). The relevant deadlines for agency responses to FOIA requests and appeals are set out in 5 U.S.C. § 552(a)(6)(A): the agency must respond to a FOIA request within ten days of receipt of the request, and must respond to an appeal within twenty days of receipt of the appeal. However, the agency may grant itself one ten-day extension of time for either the initial response or the administrative appeal, upon notice to the requester.[2] 5 U.S.C. § 552(a)(6)(B).

If the agency has not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit. At that time, the court may determine that the agency has been diligently working on a response to the request, but has been unable to meet the deadline because of exceptional circumstances, and may grant an extension of time to allow the agency to finish reviewing the request.[3] 5 U.S.C. § 552(a)(6)(C); *see also Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C.Cir.1976) (holding that the district court properly granted an extension of time to the agency when the agency was deluged with requests for information vastly in excess of that anticipated by Congress, and the agency was processing the requests with due diligence on a first in, first out basis). Despite this administrative appeal process set out in the FOIA, however, appellant interprets 5 U.S.C. § 552(a)(6)(C) as making *all* claims against an agency immediately and irrevocably ripe for judicial review if the agency fails to respond within the ten-day statutory deadline.[4]

**2.** *See* H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 11 (1974) (ten-day extension created for "'unusual circumstances' in situations ... where the agency must search for, collect, and examine a voluminous amount of separate and distinct records demanded in a single request, or where the agency has a need to consult with another agency").

**3.** This part of 5 U.S.C. § 552(a)(6)(C) was included in the 1974 amendments as a safety valve after the administration protested the rigid time limits of 5 U.S.C. § 552(a)(6)(A). *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610–12 (D.C.Cir.1976); *see also* Joint Comm. Print, Freedom of Information Act and Amendments of 1974, Pub.L. No. 93–502, 94th Cong., 1st Sess. 471 (1975) ("If a person sues the agency after [the time limits have expired] and the agency is still diligently trying to complete review of the materials under exceptional circumstances, then we have another safety valve in the bill—added by specific request of the administration during our conference. The agency may ask for, and the court is authorized to grant, additional time pending completion of such review."); H.R. Conf. Rep. No. 1380, at 11 ("[T]he court [has] authority to allow the agency additional time to examine requested records in exceptional circumstances where the agency was exercising due diligence in responding to the request and had been since the request was received.").

**4.** Some district courts appear to have adopted this approach, including, apparently, the district court in this case. *See Oglesby*, Mem. op. at 12 n. 9; J.A. at 278; *see also Jenks v. United States Marshals Service*, 514 F.Supp. 1383, 1385–87 (S.D.Ohio 1981) (holding that under § 552(a)(6)(C) complete exhaustion occurred when the ten-day time limit under FOIA had expired); *Information Acquisition Corp. v. Department of Justice*, 444 F.Supp. 458, 462 (D.D.C. 1978) (same).

In support of this reading, appellant chiefly relies on *Spannaus v. United States Department of Justice,* 824 F.2d 52 (D.C.Cir.1987). *Spannaus* held that actual exhaustion of the administrative appeal was not necessary to begin the statute of limitations running for a FOIA cause of action in federal court; constructive exhaustion, *i.e.,* the passage of the ten-day period from the time of the request as set out in 5 U.S.C. § 552(a)(6)(A)(i), was sufficient for that purpose. In that decision, we characterized actual exhaustion as "permissive" once the ten-day limit has expired by virtue of 5 U.S.C. § 552(a)(6)(C).

We did not deal in *Spannaus* with the issue presented here of whether, once an agency responds to a request belatedly but before suit is filed, actual exhaustion must still be pursued before going to court. In *Spannaus,* rather, we looked to the constructive exhaustion provision only to establish when the statute of limitations in a FOIA case begins to run.[5] *Id.* at 56–57. Indeed, appellant overlooks the portion of *Spannaus* that did discuss how the statute of limitations might operate in a case where an agency has actually, but tardily, responded to a request or an appeal. *Id.* at 59–60. The appellant in *Spannaus* claimed that the statute of limitations should be tolled once an agency initially responds to a FOIA request, or an administrative appeal is taken, in order to allow the administrative process to run its course. The court carefully declined to decide this issue, however, because even if the statute of limitations had been tolled during the agency's decision on appeal, the appellant's suit would still have been time-barred. *Id.* at 60. Thus, the court specifically left open whether "an agency's initial response (denying documents) that arrives after the 10–day deadline, but before the requester

has filed suit, suspends or cuts off the right to sue." *Id.* In so doing, the *Spannaus* court explicitly attempted to reconcile its position with an earlier holding in *Dettmann v. U.S. Department of Justice. See id.* at 59; *Dettmann,* 802 F.2d at 1474.

In *Dettmann,* the FOIA requester challenged in court a FOIA disclosure procedure that she had not previously challenged in her administrative appeal. We held that because she had not exhausted her administrative remedies with respect to that challenge she could not raise it in district court.[6] *Dettmann,* 802 F.2d at 1474. The *Spannaus* court reconciled its theory of constructive exhaustion with *Dettmann*'s requirement of actual exhaustion as follows:

> [T]he court's conclusion that Dettmann's suit was barred for want of actual exhaustion is perfectly reconcilable with the [exhaustion] scheme [under § 552(a)(6)(C)] described above. The court might simply have assumed that when an agency makes its initial response after the 10–day deadline but before the requester has filed suit, the administrative appeal's mandatory character is restored. Under that view of things, the requester's statutory right to sue might perhaps be either suspended (for the brief period during which an administrative appeal is available plus the 20 working days within which it must be processed) or entirely cut off (if the requester never appeals the denial).

*Spannaus,* 824 F.2d at 59.

We agree with this interpretation of the exhaustion provision, *i.e.,* that an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed. The ten-day

---

5. In *Spannaus,* the appellant requested documents from the FBI on September 21, but the FBI failed to make a determination within ten days as required by 5 U.S.C. § 552(a)(4)(A)(i). The appellant could have sued the FBI at that time to compel a response, but instead he waited seven years and nine months before filing suit, well beyond the six year statute of limitations contained in 28 U.S.C. § 2401(a) (1982). *See Spannaus,* 824 F.2d at 54–55.

6. Dettmann requested documents in January 1977, but received the first batch only in September 1977. The opinion says nothing about when the FBI "determined whether to comply with" Dettmann's requests, *Dettmann,* 802 F.2d at 1473, so the *Spannaus* court refused to speculate about the compliance of the FBI with the time limits for constructive exhaustion purposes. *Spannaus,* 824 F.2d at 59.

constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request. But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review. This interpretation of the exhaustion provision of the FOIA is consistent with the structure of the statute.

Section 552(a)(6)(A) provides for an administrative appeal where an agency's determination is adverse; judicial review of that determination is available after the agency determination has been upheld in the administrative appeal. This section states that the agency shall "immediately notify the person ... of the right ... to appeal *to the head of the administrative agency* any adverse determination." 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). It does not suggest that a FOIA requester has the immediate right to appeal to the court without first appealing to the head of the agency. Rather, the next paragraph provides for judicial review *after* the administrative appeal has taken place: "if on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person ... of the provision for judicial review of that determination." 5 U.S.C. § 552(a)(6)(A)(ii).

The purpose of the ten-day limit for an agency response is to allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents. The court may then order the agency to respond to the request. *See Cleaver v. Kelley*, 427 F.Supp. 80, 82 (D.D. C.1976) (ordering the agency to refrain from refusing to process the plaintiff's request and to produce the requested documents or provide sufficient justification for withholding the documents). Or, the court may review the request itself under the *de novo* review provision.[7] 5 U.S.C. § 552(a)(4)(B). Frequently, if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination. 5 U.S.C. § 552(a)(6)(C); *see Open America*, 547 F.2d at 610–12.

We believe that where a requester has chosen to wait past the ten-day period until the agency has responded, Congress intended that the administrative route be pursued to its end.[8] It did not mean for the court to take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding.

Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors. The extra several weeks consumed in processing an adminis-

---

7. The *de novo* review provision in the FOIA states that a district court:
 has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.
 5 U.S.C. § 552(a)(4)(B).

8. Congress adopted the time limit provision in the FOIA "in order to contribute to the fuller and faster release of information, which is the basic objective of the Act." H.R.Rep. No. 876,

93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 6285, 6289. The constructive exhaustion provision was a spur to the agencies to respond within the ten-day deadline. Congress provided for a timely administrative appeal process under 5 U.S.C. § 552(a)(6)(A)(ii) as well, whereby the agency must respond to an appeal within 20 days, after which the individual may seek judicial review. *See* 5 U.S.C. § 552(a)(6)(A)(ii). We doubt that, having provided for an administrative appeal process with a short deadline, Congress could have intended that this process could be superseded by judicial review solely because the initial agency response to the FOIA request was delinquent. The statutory twenty days allowed for a decision on appeal hardly posits an unreasonable addition to the lifespan of a FOIA request.

trative appeal to completion must surely have been thought a tolerable price to ask from a requester who has already chosen to wait for a response from the agency. If there is to be any uniformity in FOIA interpretations within a given agency, and if agencies are to have an opportunity to revise their responses in light of intervening responses to the same FOIA request by other agencies, such uniformity can best be afforded through the administrative appeal process. Enforcing the ten-day limit by allowing requesters unhappy with the first level response to their request to go to court months or even years after the agency has responded would amount to little more than a continuing penalty on the agency for its initial delay. A requester who waits long past the ten-day deadline for the agency's response and then brings suit without administrative appeal has by his actions indicated that time cannot be of the essence.

In this case, only one of the six agencies met the initial statutory deadline, but all six completed their review and made their initial determinations on appellant's requests long before appellant brought suit and within weeks or months of his requests. In such circumstances, we believe that the FOIA allows the agencies to have the benefit of the full administrative process before suit is filed. Congress intended that individuals receive information from the government promptly, but it also provided a statutory administrative appeal process, allowing the agency to complete its disclosure process *before* courts step in. We therefore interpret 5 U.S.C. §§ 552(a)(6)(A) and (C) as requiring the completion of the administrative appeal process before courts become involved, if the agency has responded to the request before suit is filed.

■ A response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse. 5 U.S.C. § 552(a)(6)(A)(i); *see Shermco Industries v. Secretary of the United States Air Force,* 452 F.Supp. 306 (N.D.Tex.1978), *rev'd on other grounds,* 613 F.2d 1314 (5th Cir. 1980). Assuming an agency's initial response complies with these requirements, the FOIA requester must appeal to the head of the agency.[9]

■ Although in future cases foregoing an administrative appeal will preclude the requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies, *see Spannaus,* 824 F.2d at 59 (statutory right to sue might be entirely cut off if the requester never administratively appeals the denial), we think that result cannot be applied here. We acknowledge that the precise requirements of FOIA exhaustion have heretofore not been sufficiently certain that appellant should be penalized for not having discerned that an administrative appeal was mandatory; accordingly, we will allow the appellant in this case to pursue his appeals before the administrative agencies regardless of the expiration of the agencies' appeal deadlines. Where, as discussed below, appellant has not constructively exhausted his claims, he must appeal to the agencies within 60 days from the date of the district court's order on remand from this court.[10] Following his adminis-

---

**9.** Many agencies require that an administrative appeal be filed within a specific time limit. The agencies included in this case have adopted the following time limits: The FBI requires an appeal to the head of the agency within thirty days of receipt of the agency's response, 28 C.F.R. § 16.8(a) (1986); the CIA requires an appeal within 30 days, but an additional 30 days may be granted for good cause, 32 C.F.R. § 1900.51(d) (1987); State requires an appeal within 60 days, 22 C.F.R. § 171.60(a) (1980); the Army requires an appeal within 45 days from the date of the initial denial letter, 32 C.F.R. § 518.16(c) (1982); the NSA regulations do not specify a deadline for appeal, 32 C.F.R. § 299a.7 (1975); and NARA's regulations do not specify a deadline for appeal, 36 C.F.R. § 1254.30(c) (1975).

**10.** For the sake of administrative convenience in this case, we adopt the longest of the deadlines set forth in note 9, *supra.*

trative appeals, or if the agencies do not respond within twenty days of the appeal, the appellant will be deemed to have fully exhausted his administrative remedies and may bring suit.

Under the exhaustion requirements we have just discussed, we next determine whether the six agencies properly responded to appellant's requests so as to require that he pursue administrative appeals before initiating suit in the district court.

### III. AGENCY RESPONSES TO APPELLANT'S FOIA REQUESTS

#### A. *The Department of the Army*

■■■ Appellant submitted a request to the Army on August 21, 1985; the Army responded by a letter dated March 31, 1986. The Army responded that it had identified records concerning Operation Rusty and Odessa that might be responsive to Oglesby's request, but that a fee commitment was necessary before the Army could proceed with the search. *See* Letter to Carl Oglesby from Thomas F. Conley (March 31, 1986), *reprinted in* J.A. at 31–32. The Army refused to waive fees because it was "not convinced" that there was a sufficient public interest to justify a waiver.[11] *See id.* Exhaustion does not occur until the required fees are paid or an appeal is taken

from the refusal to waive fees. *See National Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C.Cir.1987) (where the requester failed to adequately demonstrate a public interest for a fee waiver before the agency it cannot do so before a court without first exhausting its administrative remedies); *Irons v. FBI*, 571 F.Supp. 1241, 1243 (D.Mass.1983) (upholding regulation requiring payment of fees, or waiver of fees, before FOIA request is deemed to have been received); *Crooker v. United States Secret Service*, 577 F.Supp. 1218, 1219 (D.D.C.1983) (requester must pay fees or administratively appeal the requirement of fees before seeking judicial review of the denial of his FOIA request).

Once appellant made his commitment to pay the Army search and copy fees, by letter dated April 3, 1986, he fulfilled the requirements for a valid FOIA request. *See* Letter to Thomas F. Conley from Carl Oglesby (April 3, 1986), *reprinted in* J.A. at 33. Ten days after that date, appellant was free to sue the Army in district court to compel a response. However, he did not do so; instead, he waited to file suit until after the Army responded on May 20, 1986, with its determination to withhold most of the records on exemptions 1 and 7(D) grounds.[12] *See* Letter to Carl Oglesby

---

**11.** To qualify for a waiver of search and copy fees under the FOIA, a requester must make an adequate showing that the information requested is in the public interest and that it is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); *see supra* note 1. Appellant's first showing of public interest for the fee waiver request was conclusory and clearly insufficient under 5 U.S.C. § 552(a)(4)(A)(iii). Appellant merely stated: "Pursuant to 5 U.S.C. (a)(4)(A), I request a waiver of all search fees and copying costs. The information requested is beneficial to the public interest. I am a writer and lecturer who has disseminated such information in the past, and I intend to do so in the future." *See* Letter to the Department of the Army from Carl Oglesby (Aug. 21, 1985), *reprinted in* J.A. at 29.

In a letter dated April 3, 1986, appellant made a further showing, explaining the public interest nature of the information and the specific journals in which he had previously published and which could be future forums for his work. *See* Letter to Thomas F. Conley from Carl Oglesby (April 3, 1986), *reprinted in* J.A. at 33–34. Apparently, the Army found this supplementary

showing to be unsatisfactory as well, because it charged appellant fees for search and copying. *See* Letter to Carl Oglesby from Robert J. Walsh, Jr. (May 22, 1986), *reprinted in* J.A. at 40–42. The NSA, in contrast, accepted the showing as adequate to justify waiver of fees. Mem. op. at 9; J.A. at 275. Because appellant did not exhaust his administrative remedies with respect to the Army's denial of his fee waiver request, we will not decide the merits of appellant's claim that his fee waiver was unreasonably denied. However, appellant's second showing was significantly more revealing than the first and, particularly in view of NSA's positive response to appellant's second showing, and the need for uniformity among the agencies in their application of FOIA, we invite the Army's reconsideration of its denial. *See Larson*, 843 F.2d at 1483 (a request for a waiver of fees must include a showing that there is a public interest in the subject matter and that the requester is able to disseminate the information to the public).

**12.** The Army withheld certain documents under exemption 1 of the FOIA, 5 U.S.C. § 552(b)(1), claiming that the withheld documents, or parts

from Robert J. Walsh, Jr. (May 20, 1986), *reprinted in* J.A. at 36–37.

Appellant filed suit on December 11, 1987, challenging the Army's denial of his fee waiver request, the partial denial of his request for information, and the inadequacy of the search. Because, however, he did not take an administrative appeal on any of these claims, judicial review of such claims is precluded at this time.

B. *The Department of State*

■ Appellant submitted his request to State on August 21, 1985. State responded by letter dated September 9, 1985, agreeing to process his request. *See* Letter to Carl Oglesby from Peter M. Sheils (Sept. 9, 1985), *reprinted in* J.A. at 52. State then sent a second letter, before appellant filed suit, informing him that no records responsive to his request had been found. *See* Letter to Carl Oglesby from Josephine Jelenovic (Feb. 13, 1986), *reprinted in* J.A. at 53.

State's letter constituted an "adverse determination" under 5 U.S.C. § 552(a)(6)(A)(i) because appellant did not receive the documents he requested. Under the FOIA, the agency is required to "notify the [requester] ... of [the agency's] determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C. § 552(a)(6)(A)(i). A FOIA requester, dissat-

isfied with the agency's response that no records have been found, may wish to challenge the adequacy of the agency's search. The agency has a duty to notify appellant "of the right ... to appeal to the head of the agency," in cases where no records are found in its response as well as those in which specific records are denied. 5 U.S.C. § 552(a)(6)(A)(i).

State's letter to appellant, however, merely informed him that he could call the agency for further information: "If you have any questions, please contact the Information and Privacy Staff." This did not qualify as notice to appellant of his right to appeal the negative reference to his inquiry. Because, then, State did not provide notice of appellant's right to appeal, its response was insufficient under the FOIA to trigger the exhaustion requirement and appellant was free to file suit under 5 U.S.C. § 552(a)(6)(C). We therefore reach the merits of his claim.

■ Appellant challenges the reasonableness of State's search because the agency only searched the record system "most likely" to contain the requested information,[13] the Central Foreign Policy Records ("Central Records"), *i.e.*, State's centralized record system which contains all documents "that establish, discuss, or define foreign policy; set precedents; or require actions used by more than one office."[14] Declaration of Frank M. Machak,

thereof, contained national security information classified "secret" under Executive Order No. 12356. Although we do not reach the merits of appellant's challenge to the claimed exemption, we do note that the Army's affidavit justifying the withholdings under this exemption was scant, at best. *See* Affidavit by Robert J. Walsh, Jr., *reprinted in* J.A. at 233A–233K. With respect to one withholding in particular (document 15 consisting of 483 pages, entitled Operation Rusty), the justification failed to indicate whether there were any segregable portions of the 483–page document that need not be classified as national security information under Executive Order 12356. *See* J.A. at 233G. If the Army is presented with a second opportunity to justify its withholdings, we anticipate that it will be more forthcoming in meeting the requirements set out in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (mandating a detailed description of each document withheld

and a detailed justification for why the exemption applies for each document in its entirety rather than segregable portions thereof).

13. Appellant also contends that the search was unreasonable because the agency did not find responsive documents that appellant claims *must* exist, namely, documents concerning the meeting at Fort Hunt. However, appellant provides no proof that these documents exist and his own conviction that the Fort Hunt meeting was of such importance that records must have been created is pure speculation. Such hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search. *Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir.1986).

14. The agency only searched the Central Records for documents within the time period 1954 through 1956 because all materials before

*reprinted in* J.A. at 136, 137. The district court found that State's search was adequate and granted summary judgment based on the agency's affidavit describing its search. *Oglesby*, Mem. op. at 6–7; J.A. at 272–73.

There is no requirement that an agency search every record system. *See Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir. 1986) (search is not presumed unreasonable simply because it fails to produce all relevant material); *Miller v. United States Department of State*, 779 F.2d 1378, 1384–85 (8th Cir.1985) (same); *Perry v. Block*, 684 F.2d 121, 128 (D.C.Cir.1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist); *Marks v. United States Department of Justice*, 578 F.2d 261, 263 (9th Cir.1978) (no requirement that an agency search every division or field office on its own initiative in response to a FOIA request when the agency believes responsive documents are likely to be located in one place). However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested. It is not clear from State's affidavit that the Central Records system is the *only* possible place that responsive records are likely to be located. At the very least, State was required to explain in its affidavit that no other record system was likely to produce responsive documents.

In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *See Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984); *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983); *see also Weisberg v. United States Department of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the proce-

dures utilized). State has not satisfied this burden. Its affidavit merely states that "[b]ased upon the information contained in Mr. Oglesby's letter, and consistent with customary practice and established procedure, a search was initiated of the Department record system most likely to contain the information which had been requested for the time period 1954–1956, namely, the Central Records." Declaration of Frank M. Machak, *reprinted in* J.A. at 138. The affidavit does not show, with reasonable detail, that the search method, namely searching the Central Records, was reasonably calculated to uncover all relevant documents. Nor does the affidavit identify the terms searched or explain how the search was conducted. *Compare with* Affidavit of Robert J. Walsh, Jr., Department of the Army, *reprinted in* J.A. at 263–65 (affidavit by the Army showing the topics searched and the type of search performed, for example a name only index and master name index, and what those indices contain). A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

Because State's affidavit did not adequately describe the agency's search, summary judgment on the adequacy of the search was improper. Accordingly, we vacate the district court's order dismissing appellant's claim against State and remand to the district court. On remand, the district court may order State to submit a reasonably detailed affidavit upon which the reasonableness of its search can be judged.

### C. *The Federal Bureau of Investigation*

 Appellant sent his request to the FBI on August 21, 1985. The agency responded initially by letter dated September 6, 1985. *See* Letter to Carl Oglesby from

1954 had been accessioned by NARA. J.A. at 136.

James K. Hall (Sept. 6, 1985), *reprinted in* J.A. at 55. The initial response merely informed appellant that the FBI was processing the request. We need not determine whether this was an adequate and timely response under 5 U.S.C. § 552(a)(6)(A)(i) for constructive exhaustion purposes, because the FBI sent additional letters before appellant filed suit. These letters, dated October 3, 1985, October 29, 1985, January 15, 1986, and February 26, 1986, apprised appellant of the status of his request. *See* Letter to Carl Oglesby from James K. Hall (Oct. 3, 1985), *reprinted in* J.A. at 56; Letter to Carl Oglesby from James K. Hall (Oct. 29, 1985), *reprinted in* J.A. at 57; Letter to Carl Oglesby from James K. Hall (Jan. 15, 1986), *reprinted in* J.A. at 58; Letter to Carl Oglesby from Marvin E. Lewis (Feb. 26, 1986), *reprinted in* J.A. at 59–60. The last letter notified appellant of its "final" determination to release 15 pages of material and to withhold excerpts of that material under exemptions 1 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(1), 7(C), and notified appellant of his right to an administrative appeal. Appellant did not file suit until December 11, 1987, almost two years after this final determination was made. Because appellant did not administratively appeal his challenges to the agency, we find that he did not exhaust his administrative remedies. Judicial review of the FBI's determination, therefore, is precluded at this time.

### D. *The Central Intelligence Agency*

█ Appellant sent his request to the CIA on August 21, 1985. The CIA responded on September 3, 1985. *See* Letter to Carl Oglesby from John H. Wright (Sept. 3, 1985), *reprinted in* J.A. at 45. The September 3 letter indicated that the CIA would go forward with the search absent any problems or any need for additional information. Again, we need not determine if this response was adequate for constructive exhaustion purposes, because the CIA made its final determination on the merits of appellant's request before appellant filed suit. On September 10, 1985, the CIA released 20 pages of declassified material to appellant without charge and indicated that other records were being transferred to NARA and that appellant should contact NARA directly. *See* Letter to Carl Oglesby from John H. Wright (Sept. 10, 1985), *reprinted in* J.A. at 46–47. On October 3, 1985, the CIA informed appellant of its determination to withhold documents responsive to appellant's request, pursuant to exemption 3, 5 U.S.C. § 552(b)(3),[15] and to deny appellant's request for a fee waiver for future searches.[16] *See* Letter to Carl Oglesby from John H. Wright (Oct. 3, 1985), *reprinted in* J.A. at 50. Appellant did not file suit until December 11, 1987, more than two years after the CIA had made its final determination. We find that the exhaustion of administrative remedies became mandatory when the CIA made its determination regarding appellant's request and appellant was thereafter required to appeal any challenges he had to the head of the agency before seeking judicial review. Since he did not administratively appeal his challenges, judicial review is precluded at this time.

### E. *National Archives and Records Administration*

█ Appellant sent his request to NARA on September 19, 1985. NARA's military headquarters and military field office responded separately to the request: the military headquarters responded on October 1, 1985, and the military field office responded on November 14, 1985. *See* Letter to Carl Oglesby from Wilbert Mahoney

---

**15.** By letter dated May 27, 1986, the CIA also denied appellant access to records originating with the CIA, but currently held by the FBI, on exemptions 1 and 3 grounds. *See* Letter to Carl Oglesby from Lee S. Strickland (May 27, 1986), *reprinted in* J.A. at 61.

**16.** The CIA indicated it would not initiate any new searches (for records created after 1983) until appellant agreed to commit to search fees. Appellant's showing of public interest was identical to the first showing made to the Army, which was, in our view, inadequate under 5 U.S.C. § 552(a)(4)(A). *See supra* note 11. No supplemental showing was made to the CIA following the October 3 letter.

(Oct. 1, 1985), *reprinted in* J.A. at 73; Letter to Carl Oglesby from Edwin A. Thompson (Nov. 14, 1985), *reprinted in* J.A. at 74–75.

The response from the military headquarters indicated that no records were found relating to meetings between General Gehlen and U.S. officials, or to Operation Rusty, and that records relating to Werewolf activities and the Odessa Movement would be furnished subject to fees for copying the documents. In addition, the headquarters indicated that records relating to Operation Sunrise were too numerous to search, but that these records would be made available in their entirety in the NARA research room for appellant to review for himself. Appellant contends that NARA did not fulfill its FOIA obligation when it merely provided records for appellant's review in its public reading room. We find that NARA's response was adequate under the FOIA.

NARA did not deny appellant any records; all relevant records were made available to him. In *Tax Analysts v. United States Department of Justice*, 845 F.2d 1060 (D.C.Cir.1988), *affirmed*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), we held that an agency "need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access," for example, making records available in a reading room. *Tax Analysts*, 845 F.2d at 1065, 1066–67; 109 S.Ct. at 2852; *see also Grunfeld & Herrick v. United States Customs Service*, 709 F.2d 41, 42 (11th Cir.1983) (holding that the Customs Service complied with FOIA by posting the requested information at the customshouse); *Lead Industries Association, Inc. v. Occupational Safety & Health Administration*, 610 F.2d 70, 86 (2d Cir.1979) (agency not required under FOIA to send requester copies of records that had appeared previously in a

report published by the agency); *Eason v. Nuclear Regulatory Commission*, 1 G.D.S. ¶ 80,092 (D.D.C.1980) (a daily compilation of current newspaper and magazine articles on nuclear energy made available to the public in the Commission's Public Document Room was sufficient), *cited with approval in Tax Analysts*, 845 F.2d at 1065 n. 10. An agency is not required by the FOIA to mail copies of records, "nor even to provide a requester-convenient location for access." *Tax Analysts*, 845 F.2d at 1067; *see also Nolen v. Rumsfeld*, 535 F.2d 890, 892 (5th Cir.1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555 (1977) (agency not required to mail copies of requested records or pay travel expenses to obtain the requested records). While the agency may not send the FOIA requester on a "scavenger hunt," *Tax Analysts*, 109 S.Ct. at 2852, in this case NARA has not done so; it has made all responsive records available in one central location for appellant's perusal. This satisfied the requirement under the FOIA to make records available to the public.

Appellant also challenges the adequacy of NARA's search and the denial of his fee waiver request; however, he did not pursue any of these challenges administratively. Until appellant exhausts his administrative remedies by appealing his challenges to the head of the agency, judicial review of any challenge is precluded.[17]

NARA's military field office responded on November 14, 1985, releasing one index card of information, but withholding three other index cards pursuant to exemption 1, 5 U.S.C. § 552(b)(1). The November 14 letter properly informed appellant of his right to appeal and the process and deadline for doing so. Appellant did not appeal NARA's decision administratively, however. Therefore, appellant did not exhaust

---

**17.** The district court held that NARA properly responded to Oglesby's FOIA request by making the responsive records publicly available; therefore it did not reach the question of whether NARA is subject to the FOIA's fee waiver provision. Mem. op. at 14; J.A. at 280. NARA argued on appeal that its own fee statute, 44 U.S.C. § 2116(c), supersedes the fee waiver provisions in the FOIA, § 552(a)(4)(A). We do not need to reach the issue of whether the fact of public access obviates the need for fee waiver or whether NARA's own fee statute precludes waiver in this case, because appellant failed to exhaust his administrative remedies with respect to his fee waiver request.

his administrative remedies as required before seeking judicial review.

## F. *The National Security Agency*

 Appellant sent his request to the NSA on August 21, 1985. The NSA responded on October 15, 1985, informing appellant that it would not conduct the search unless he paid one-half of the estimated search costs in advance and also agreed to pay the balance. *See* Letter to Carl Oglesby from Julia B. Wetzel (Oct. 15, 1985), *reprinted in* J.A. at 70–71. Appellant did not challenge the NSA's denial of his fee waiver request administratively, therefore he did not constructively exhaust his remedies and was not entitled initially to bring any challenge in district court. The district court nevertheless found that the issue of the fee waiver was the only issue before the court at that time, and that the issue was moot because the NSA subsequently agreed to waive the fees. *See Oglesby*, Mem. op. at 9; *reprinted in* J.A. at 275. However, because the appellant had failed to exhaust his administrative remedies with respect to each of his claims, none of his claims were properly before the court, including the challenge of the NSA's denial of appellant's fee waiver request.

Appellant's FOIA request became complete when the NSA granted his fee waiver request. If, as suggested by the briefs in this case, the NSA has already responded to appellant's FOIA request, then appellant must pursue his administrative remedies with respect to any adverse rulings before bringing suit.

## IV. CONCLUSION

We find that the ten-day constructive exhaustion provision of FOIA, 5 U.S.C. § 552(a)(6)(C), permits a requester to bring suit in federal district court only if he has not yet received a determination from the agency on his request. If he has received an adverse determination before bringing suit, he must pursue the matter through the agency appeal process, set out in 5 U.S.C. § 552(a)(6)(A)(ii). Once the head of the agency has made a determination on appeal or the twenty-day statutory deadline for the appeal decision has passed, he may bring suit in federal district court pursuant to 5 U.S.C. § 552(a)(4)(B).

In this case, appellant did not appeal any of his claims administratively. We hold that the Army, the CIA, the NSA, the FBI, and NARA properly responded to Oglesby's FOIA request before he filed suit. Therefore, judicial review of his claims against these five agencies was precluded. We therefore vacate the order of the district court with respect to the Army, the CIA, the NSA, the FBI, and NARA and remand with orders to dismiss appellant's claim against these agencies for failure to exhaust his administrative remedies and to grant to petitioner the right, if he chooses, to pursue administrative appeals from the initial agency denials within 60 days from the date of the district court's order on remand from this court. We also hold that State did not properly respond to Oglesby's request before he filed suit; therefore, appellant constructively exhausted his remedies with respect to State, and was not precluded from bringing his claim in district court. We find that State did not show, with reasonable detail, that its search was adequate; accordingly, we vacate the district court's dismissal of appellant's claim against State and remand to the district court to make further findings concerning the adequacy of State's search.

*So ordered.*