PUBLIC CITIZEN, INC., Plaintiff,

v.

DEPARTMENT OF EDUCATION,
et al., Defendants.

No. CIV.A. 01–2351(ESH).

United States District Court,
District of Columbia.

Nov. 10, 2003.

Michael Edward Tankersley, Public Citizen Litigation Group, Washington, DC, for Plaintiff.

William Mark Nebeker, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HUVELLE, District Judge.

By Memorandum Opinion and Order issued in this case on June 17, 2002, the Court ordered defendants to comply with plaintiff's August 2001 FOIA request for the identities of certain student loan borrowers whose loans had been "falsely certified," but whose loans defendant Department of Education ("DOE") had refused to discharge because the borrower had failed to meet certain employment requirements that were later deemed unlawful by this Circuit in *Jordan v. Secretary of Education*, 194 F.3d 169, 172 (D.C.Cir.1999). In response to this Court's June 17 Order, the DOE claims to have searched its student loan database for responsive records. Contending that this search was inadequate, plaintiff has filed a Motion to Enforce Judgment, requesting that the Court order defendants to search DOE's paper student loan discharge files. DOE opposes this motion, arguing that its search was sufficient to satisfy FOIA's requirements and that plaintiff should be ordered to pay DOE's costs and fees associated with its database search, along with any fees that may be incurred in the event that additional searches are ordered by this Court. Upon consideration of the pleadings and the entire record herein, this Court finds defendants' arguments to be unconvincing, and plaintiff's motion for enforcement will thus be granted.

## BACKGROUND

The background to this case is set out in the Court's prior Memorandum Opinion dated June 17, 2003. In brief, plaintiff sought disclosure of records under FOIA in an effort to shed light on defendant DOE's activities and to be able to inform certain student loan borrowers of their potential eligibility for loan discharges. In 1992 Congress required the Secretary of Education to discharge loans of borrowers who had been falsely certified by their schools as able to benefit from vocational programs. *See* 20 U.S.C. § 1087(c)(1). Thereafter, the Secretary of Education implemented regulations that required any

student seeking a discharge to submit a statement that he or she had attempted, but was unable, to find employment in the occupation for which the program provided training, or that he or she was able to do so only after further training. *See* 34 C.F.R. § 682.402(e)(3)(ii)(C) (repealed) (quoted in *Jordan,* 194 F.3d at 170). The Court of Appeals held that these discharge conditions relating to subsequent employment were unlawful. *Id.* at 171. In response, the Secretary of Education removed the "employment attempt" provisions in 2000, but did not grant the discharge applications that previously had been denied between 1992 and 2000. *See* 34 C.F.R. § 682.402.

As a result, plaintiff made two FOIA requests to DOE for information relating to student loan borrowers who had been improperly denied discharges between 1992 and 2000. At issue here is plaintiff's August 13, 2001 request for "records that identify the borrowers who were denied discharge under 20 U.S.C. [§ ] 1087(c)(1) on the basis of the subsequent employment conditions that the Department initially imposed." (Defs.' Ex. 3 at 1.) In that letter, plaintiff also requested a fee waiver. (*Id.*) Defendants initially denied plaintiff's request, relying only on Exemption 6 pertaining to personal privacy protection. On appeal of this denial, this Court ruled that defendants had improperly invoked Exemption 6 and that they had to comply with plaintiff's FOIA request. (Mem. Op. at 24.)

In response to this Court's Order, defendants determined that over 25,000 loan discharge applications were denied for a variety of reasons between 1995 and November 2000, and that a search of the paper files containing each borrower's application and reasons for that borrower's

denial would therefore "be very costly and take many hours to complete." (Decl. of Ronald F. Robinson ["Robinson Decl."] ¶¶ 12, 13.) Instead of manually searching these paper files, DOE embarked on an electronic search of its student loan database. (Decl. of Paul Joseph Weber ["Weber Decl."] ¶¶ 5–16; Supp. Decl. of Paul Joseph Weber ["Weber Supp. Decl."] ¶¶ 3–9.) When a borrower applies for a loan discharge, his or her account is given a certain code in the database. (Weber Decl. ¶ 4.) DOE electronically searched its database's "Notepad" entries attached to accounts given this code. (*Id.* ¶ 5.) Notepad entries are computer records related to individual accounts and entered on-line by DOE personnel after some contact with the borrower. (Weber Decl. ¶ 6.) DOE searched the 1,200,000 Notepad entries associated with the accounts of borrowers who applied for loan discharges for relevant keywords such as "deny," "work," "employ," and "job" in an attempt to identify those who were denied because they failed to meet the DOE's subsequent employment requirements. (Weber Decl. ¶¶ 7, 9–11; Weber Suppl. Decl. ¶¶ 7–9.) As a result of these searches, DOE ultimately identified 4,600 possible records, which were associated with 770 individuals, containing some combination of the words searched.[1] (Weber Decl. ¶ 12.) These records were then reviewed to determine which were responsive. (Weber Decl. ¶¶ 15–16; Decl. of Candice M. Parrish ["Parrish Decl."] ¶¶ 3–8; Decl. of Crystal Sweet ["Sweet Decl."] ¶¶ 3–8.) As a result of this search, DOE personnel produced and delivered to plaintiff a list of 179 individuals who had been denied a discharge due to employment conditions. (Parrish Decl. ¶ 8; Sweet Decl. ¶ 8; Pl.'s Mot. at 6.)

---

1. One individual might have multiple Notepad entries associated with his or her record.

(Defs.' Opp. at 4 n. 3.)

**4**

## LEGAL ANALYSIS

### I. Fee Waiver

■ FOIA requesters must generally pay reasonable charges associated with processing their requests. 5 U.S.C. § 552(a)(4). DOE regulations provide that if a FOIA request would result in a search costing more than $25 or an amount specified in the request, then the requester must be notified and afforded an opportunity to reformulate the request. 34 C.F.R. § 5.61. Further, DOE regulations require the agency to contact the requester and obtain satisfactory payment arrangements whenever the estimated costs exceed $250. 34 C.F.R. § 5.62(a).[2] Some requesters may be entitled to a waiver of these fees. For instance, FOIA requires agencies to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest . . . ." § 552(a)(4)(iii). A requester who disagrees with the denial of a waiver must pursue administrative remedies. *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C.Cir.2003); *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61–62 (D.C.Cir.1990). However, if the agency fails to respond to a waiver request within 20 days, the requester is deemed to have constructively exhausted administrative remedies and may seek judicial review. § 552(a)(6)(A), (C); *see also Rossotti*, 326 F.3d at 1310.[3]

■ Plaintiff's August 13, 2001 FOIA request to DOE included a request for a fee waiver, claiming that disclosure of the requested information was in the public interest. (Defs.' Ex. 3 at 1.) Further,

plaintiff's letter requested that it be notified before fees were incurred "[i]f fees are not waived and the anticipated fees exceed $50.00 . . . ." (*Id.*) Defendants responded to plaintiff's request on January 7, 2002, denying plaintiff's request for records, but failing to address plaintiff's request for a fee waiver. (Letter of 1/7/2000 from Maria–Teresa Cueva, DOE FOIA Officer, to Michael Tankersley.) Plaintiff argues that because DOE neglected its statutory duty by failing to respond to plaintiff's request, it is now barred from contesting the waiver. (Pl.'s Reply at 7–9.) More precisely plaintiff contends that, because DOE did not reply to its fee waiver request, but instead proceeded to search for responsive documents without seeking plaintiff's assent to the fees it incurred, DOE's conduct is "only consistent with . . . [DOE's] regulations if the agency intended to waive fees under the public interest standard." (*Id.* at 9.)

Although DOE responded to plaintiff's FOIA request for documents, it concedes that it did not respond to plaintiff's fee waiver request prior to filing its opposition to plaintiff's motion; instead, it argues that the fee waiver issue has never been ripe for judicial determination. (Defs.' Opp. at 13.) Defendants' argument is unpersuasive. DOE neglected its statutory duty to respond to plaintiff's request for a fee waiver within 20 days of its request. 5 U.S.C. § 552(a)(6)(A)(i). It also did not notify plaintiff that costs associated with its request would exceed $50, the amount plaintiff indicated it was willing to pay and

---

**2.** The regulations further provide that requests are not deemed to have been received until the agency receives satisfactory assurances of payment or advance payment. 34 C.F.R. § 5.62(c). Presumably, though, this assumes that the agency has notified the requester that estimated fees for complying with its request exceed $250, as required by § 5.62(a).

**3.** However, if the agency responds to plaintiff's request after the statutory 20 days but prior to the filing of suit, then the requester must still exhaust administrative remedies before seeking judicial review. *Oglesby*, 920 F.2d at 64–65.

thereby deprived plaintiff of the opportunity to reformulate its request before costs were incurred. 34 C.F.R. § 5.61. Further, DOE failed to notify plaintiff that costs for its request would exceed $250, as required by 34 C.F.R. § 5.62. Instead, it went ahead with its search. Having failed to object to plaintiff's fee waiver request when it was required by statute to do so and having proceeded with a search without notifying plaintiff of the cost of that search, DOE cannot now, at this late date, object to plaintiff's claims on the basis that plaintiff must pay for searches already performed or additional searches that may be required.[4]

Further, allowing defendants to object at this point to the fee waiver would, in effect, allow DOE to raise its defenses to plaintiff's August 13, 2001 FOIA request at different times throughout the litigation, thereby undermining the very goals recognized by the Circuit in *Smith v. United States Department of Justice*, 251 F.3d 1047, 1051 (D.C.Cir.2001). There, the Court held that all FOIA exemption claims must be raised at once, since "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of 'efficient, prompt, and full disclosure of information,' ... and with 'interests of judicial finality and economy.'" 251 F.3d at 1051 (quoting *Maydak v. United States Dep't of Justice*, 218 F.3d 760, 764 (D.C.Cir.2000)). Just as allowing an agency to assert its exemption claims at different times during the course of litigation frustrates the efficient and prompt administration of FOIA, allowing defendants now to argue for the first time that plaintiff must pay fees would likewise frustrate these goals, as well as deprive plaintiff of its right to administrative and judicial review of such a denial.[5] Accordingly, defendants' untimely request that plaintiff be required to pay the costs of past and future searches is denied.

## II. Adequacy of the Search

Plaintiff contests the adequacy of DOE's search. As an initial matter, the parties

**4.** In its recent Notice of Filing Supplemental Authority, defendants cite *LaCedra v. Executive Office for United States Attorneys*, Civil Action No. 99–0273 (D.D.C. Nov. 5, 2003) (JR). In that case, the court considered an agency's motion to dismiss after plaintiff had refused to pay fees the agency assessed related to his FOIA request. There, the Court held that it lacked subject matter jurisdiction over plaintiff's FOIA claim because the plaintiff had not exhausted his administrative remedies, noting that "[u]nless the agency waives fees, the payment of assessed fees or the administrative appeal from the denial of a fee waiver request is a jurisdictional prerequisite to maintaining a FOIA lawsuit." (*Id.*) However, the present case differs from *LaCedra*. LaCedra had not requested a fee waiver, but instead he ignored the agency's request that he pay fees prior to the agency's search for responsive records. (*See* EOUSA's Opp. to LaCedra's Mot. for a Vaughn Index and Cross Mot. to Dismiss at 1–3 (filed on Apr. 10, 2003).) Thus, there was an agency request for fees from which the plaintiff could have administratively appealed. In contrast, in the instant case, DOE never addressed plaintiff's request for a fee waiver; instead, it began searching for responsive information after the Court rejected its invocation of Exemption 6. As a result, plaintiff is not analogous to LaCedra, for it had no reason to assume it would be required to pay fees, nor did it have any reason to take an appeal, in view of DOE's silence in the face of plaintiff's specific fee waiver request. Accordingly, defendants' citation to *LaCedra* is inapposite.

**5.** Because defendants failed to reply to plaintiff's request for a fee waiver, plaintiff had no fee waiver decision from which it could appeal through the administrative process, *see* 34 C.F.R. §§ 5.81–.83 (detailing DOE appeal procedures), and this Court has no record upon which to evaluate plaintiff's claim that it is entitled to a fee waiver exception on the grounds that "disclosure of the information is in the public interest ...." 5 U.S.C. § 552(a)(4)(A)(iii).

disagree as to whether a search of paper files would be unduly burdensome. Generally, an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search. *See* 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe records requested); *Nation Magazine, Washington Bureau v. United States Customs Serv.,* 71 F.3d 885, 891–92 (D.C.Cir.1995) (finding unreasonable a request to search "23 years of unindexed files for records pertaining to [one individual] ... would impose an unreasonable burden on the agency"); *see also Am. Fed'n of Gov't Employees, Local 2782 v. United States Dep't of Commerce,* 907 F.2d 203, 208–09 (D.C.Cir.1990) (finding unreasonable a request to locate "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office ...").

■ Defendants must, however, provide a sufficient explanation why a search of the paper files would be unreasonably burdensome. *Nation Magazine,* 71 F.3d at 892 (instructing the district court on remand to order an agency to search files likely to contain responsive information "if it cannot provide sufficient explanation as to why such a search would be unreasonably burdensome"). For example, in *Goland v. Central Intelligence Agency,* a requester challenged the adequacy of an agency's search, and the agency argued further searches would be unduly burdensome. 607 F.2d 339, 352–53 (D.C.Cir. 1978). There, the defendant provided a detailed affidavit explaining that additional responsive documents, if they existed, could be found only by a "page-by-page search through the 84,000 cubic feet of documents" in the agency's record center. *Id.* at 353 (internal citations omitted). The Court found the agency's affidavit, which gave a "detailed explanation of why further searches would be unduly burdensome," sufficient to establish that further

searches would not be required, especially since it was not clear that the additional search would turn up responsive documents. *Id.* In contrast, in the present case, defendants admit that "[t]here is no way to determine why each individual was denied a loan discharge ... without pulling individual files, and manually reviewing each loan discharge application individually." (Robinson Decl. ¶ 12.) Even so, defendants merely claim that searching these 25,000 paper files would be "costly and take many hours to complete," indicating that the DOE would need to send the files from Texas to California, or employees from California to Texas, to complete the search. (*Id.* ¶ 13.) Without more specification as to why a search certain to turn up responsive documents would be unduly burdensome, defendants' claim must be rejected.

■ At issue, then, is whether DOE conducted an adequate search, that is, whether its computerized database search could have been expected to produce the identities of the borrowers who were wrongly denied discharge of their loans. Under FOIA, a defendant agency is obligated to conduct a "reasonable" search for responsive records "using methods which can be reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68; *see also Campbell v. United States Dep't of Justice,* 164 F.3d 20, 28 (D.C.Cir. 1998) (noting that "FOIA demands only a reasonable search tailored to the nature of a particular request"). The government has the burden to show that it complied with the FOIA, and "in response to a challenge to the adequacy of its search for requested records the agency may meet its burden by providing a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched.'"

*Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 313–14 (D.C.Cir.2003) (citation omitted).

Defendants' search does not meet this standard, since it could not have been expected to produce the information requested. First, the database that DOE searched was not designed to record the reasons discharge applications were denied, for it contained no specific code or field to specifically identify the *reason* for denial. (Pl.'s Mot. at 8–9; Defs.' Opp. at 2–3.) When a borrower applies for discharge, his or her database account is given a certain code. (Weber Decl. ¶ 4.) DOE searched accounts given this code in an attempt to glean from the database information responsive to plaintiff's request; specifically, DOE conducted keyword searches in Notepad entries attached to those accounts. (Defs.' Opp. at 3–6; Weber Decl. ¶ 5.) DOE searched the Notepad entries of these borrowers for a variety of terms that might be expected to be used to describe the reason for denial. (Def.'s Opp. at 3–6.) It is undisputed that no DOE guidelines or procedures ensured that the record of every borrower denied a discharge based on employment conditions would have a Notepad entry stating the reason for his or her denial. (Pl.'s Mot. at 9.) DOE explains that Notepad entries are entered "usually after some contact with a particular borrower via phone call, correspondence, personal contact, etc." (Weber Decl. ¶ 6.) However, it appears that decisions by the DOE to deny discharge applications, when made in the absence of post-application contact from the borrower, would not be documented in the Notepad entries. Notably, defendants do not attest that the denial letter, which would include the reason for denial, is included in the database. In sum, there is no assurance that the Notepad entries contain DOE's reason for denying borrowers' discharge applications.

Additionally, plaintiff contends that even where grounds for denying the discharge were included in Notepad entries, searching these entries was not reliable because these entries were informal—often including misspellings and word fragments—and thus, were not sufficiently standardized to ensure the success of a computerized search. (Pl.'s Mot. at 9–12.) While DOE does not deny this, instead, it describes its efforts to overcome this hurdle by writing at least 29 computer programs to search Notepad entries for words and synonyms that might indicate the reason for discharge denial. (Defs.' Opp. at 3–6; Weber Decl. ¶¶ 7–16; Weber Supp. Decl. ¶¶ 7–9.) However, because the database that was searched could not be relied upon to contain the requested information, it follows that no amount of searches of that database could be relied upon to turn up that information.

Further, DOE's computer searches filtered out 99.6% of the Notepad entries associated with borrowers who had submitted applications for discharge or other application benefits by using search terms such as "employ," "job," "work," or "deni." (Weber Decl. ¶¶ 4, 7, 10–15.) In other words, any borrowers whose Notepad entries did not contain the search terms chosen by DOE would have been filtered out by DOE's database search, and thus, those borrowers' files would not have been manually reviewed to determine whether their records were responsive to plaintiff's request. Accordingly, even though DOE searched its student loan database in an attempt to locate responsive information, such a search would not be a reasonable or reliable method for unearthing the requested information since the database and its Notepad entries were not designed to track the reasons borrowers were denied loan discharges.

Perhaps even more importantly, defendants have acknowledged that DOE failed to search the readily-available records most likely to reveal the information requested, namely, the paper discharge files. (Defs.' Opp. at 9–10.) "[A]n agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell*, 164 F.3d at 28–29 (quotations omitted) (finding that when a search of one set of agency records revealed that information responsive to a FOIA request would be found in another set of records, a search of only the first set of records was inadequate); *see also Oglesby*, 920 F.2d at 68 (noting that "[a]t the very least, [the agency was] required to explain in its affidavit that no other record system was likely to produce responsive documents") (emphasis in original). Even so, an agency need not search every record system. *Oglesby*, 920 F.2d at 68. For example, it is not required to search a second set of records that would reveal information duplicative of that found in records already searched. *Blanton v. United States Dep't of Justice*, 63 F.Supp.2d 35, 41 (D.D.C.1999) (finding that even where there was another obvious avenue for searching for responsive information, where the records searched would reveal the same responsive information as the records not searched, there was no reason for the second search). In this case, the DOE student loan database does not contain information duplicative of that found in the discharge files. While a computerized search may well be far more efficient and less costly than a manual search of the paper discharge files, that does not resolve this issue, since it is apparent that only the more cumbersome procedure is likely to turn up the requested information. Having failed to sustain its burden of showing that its computerized search was adequate, defendants' position must be rejected and plaintiff is entitled to the relief it has requested.

## CONCLUSION

For the aforementioned reasons, plaintiff will not be ordered to pay costs or fees associated with defendants' previous or future searches. Further, DOE must comply with plaintiff's Motion to Enforce Judgment by searching its paper discharge files for the information plaintiff requested in its August 13, 2001 FOIA request. This search shall be completed within ninety days of the date of this Order. A separate Order accompanies this Memorandum Opinion.

## *ORDER*

Upon consideration of plaintiff's Motion to Enforce Judgment, defendants' opposition thereto, and plaintiff's reply, it is hereby

**ORDERED** that plaintiff's Motion to Enforce Judgment is **GRANTED**; and it is

**FURTHER ORDERED** that defendant shall search DOE's individual loan files for documents responsive to plaintiff's FOIA request dated August 13, 2001, and make available for inspection and copying within ninety of the date of this order records that are responsive to this request; and it is

**FURTHER ORDERED** that defendants' request that plaintiff be required to pay fees and costs associated with defendants' past and future searches is **DENIED**.

**IT IS SO ORDERED**.