Paul WOLF, Plaintiff,

v.

**CENTRAL INTELLIGENCE AGENCY,**
et al., Defendants.

No. 01–0729 (RJL).

United States District Court,
District of Columbia.

July 14, 2004.

Daniel S. Alcorn, Falls Church, VA, for Plaintiff.

Diane Marie Sullivan, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are separate motions for summary judgment by Defendants, the Central Intelligence Agency ("CIA") and the Federal Bureau of Investigation ("FBI"). In addition, Plaintiff, Paul Wolf ("Wolf"), has filed a cross-motion for summary judgment against the CIA. After consideration of the parties' submissions and the relevant law, the Court grants the CIA's motion for summary judgment, denies Wolf's cross-motion for summary judgment against the CIA, and denies the FBI's motion for summary judgment.

## BACKGROUND

Wolf, a researcher and writer, brings this action against the CIA and FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to order the production of records concerning Jorge Elicier Gaitan ("Gaitan"). Pl.'s Compl. ¶ 1. Wolf initially made a FOIA request on September 9, 2000 to the CIA for records concerning Gaitan, a former Colombian presidential candidate who was assassinated in 1948. The CIA responded on September 22, 2000, denying Wolf's request with a "Glomar" response that neither confirmed nor denied the existence of such records.[1] The CIA based this response on FOIA Exemptions (b)(1) ("Exemption (b)(1)") and (b)(3) ("Exemption (b)(3)"). Dyer Decl. ¶ 5. A subsequent appeal was denied by the CIA, leading to the present action by the Plaintiff. Dyer Decl. ¶¶ 6–8.

Wolf made a similar request to the FBI for records pertaining to Gaitan on Octo-ber 27, 2000. Hodes Decl. ¶ 4(a). The FBI responded on November 6, 2000 by requesting either proof of Gaitan's death or a privacy waiver. Id. ¶ 4(b). Wolf submitted proof of Gaitan's death in a letter dated November 12, 2000, which was acknowledged by the FBI in a letter dated December 5, 2000. Id. ¶¶ 4(c-d). After failing to receive a response from the FBI, Wolf filed this action on April 4, 2001. Pl.'s Opp'n to FBI's Mot. for Summ. J. at 3. Then, on May 8, 2001, the FBI Headquarters ("FBIHQ") released 14 pages of documents responsive to Wolf's request. Hodes Decl. ¶¶ 4(c-e). In this response, FBIHQ cited FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(D) as the basis for withholding other information. Id. ¶ 4(e). On June 12, 2001, after a re-review of the documents, the FBIHQ released Wolf three additional pages in full and four pages that were partially redacted. Id. ¶ 4(f).

In analyzing whether these agencies properly handled Wolf's FOIA request, the Court must determine: (1) whether an adequate search was conducted to locate documents responsive to Wolf's request; (2) whether the FOIA exemptions were properly applied; and (3) whether the agencies properly considered whether exempted documents contained any reasonably segregable material that could be disclosed. With respect to the CIA, there are two additional issues: (1) whether the CIA's "Glomar" response was appropriate under 5 U.S.C. §§ 502(b)(1) and (b)(3) exemptions, and (2) if it was appropriate, whether the CIA waived those exemptions by publicly releasing information responsive to Wolf's request.

---

1. A "Glomar" response that neither confirms nor denies the existence of responsive records is appropriate when the existence or nonexistence of the requested records is itself a clas-sified fact. See Phillippi v. CIA, 546 F.2d 1009, 1012 (D.C.Cir.1976); see also Miller v. Casey, 730 F.2d 773 (D.C.Cir.1984).

## DISCUSSION

FOIA requires federal agencies to make information available to the public. 5 U.S.C. § 552. FOIA's basic purpose reflects " 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (quoting S. REP. No. 89–813, at 3 (1965)). Although nine exemptions from compelled disclosure are set forth in FOIA, 5 U.S.C. §§ 552(b)(1–9), they "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361, 96 S.Ct. 1592. In addition, FOIA grants jurisdiction to this Court to enjoin an agency from withholding agency records and to order the production of any agency records that are improperly withheld. 5 U.S.C. § 552(a)(4)(B).

### I. *Standard of Review*

 Like other cases, summary judgment is appropriate in FOIA case when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In particular, a court shall grant summary judgment in favor of an agency claiming that it has met its FOIA obligations, if the agency meets its burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.Cir.1983) (*Weisberg IV*). To do so, it "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C.Cir. 1973). Although this Court reviews agency FOIA determinations *de novo*, it must "accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981); *see also Ray v. Turner*, 587 F.2d 1187, 1194 (D.C.Cir.1978). Therefore, for Defendant's motion for summary judgment to succeed, the agency's affidavits must demonstrate the adequacy of the search conducted and describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exception, and are not controverted by either contrary evidence in the record nor by evidence of bad faith." *Military Audit Project*, 656 F.2d at 738. There being no credible issue as to the adequacy of the CIA's search, the Court will focus on the exceptions relied upon by the agency.

### II. *The CIA properly applied Exemptions (b)(1) and (b)(3).*

 Exemption (b)(1) of FOIA exempts from disclosure matters that are, "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the CIA has cited Executive Order 12958, which states that an agency may respond to a FOIA request by refusing to confirm or deny the existence of requested information when the fact of its existence or nonexistence is itself classified. Mem. in Supp. of CIA's Mot. for Summ. J. at 5; Exec. Order No. 12958 § 3.7(a), 60 Fed. Reg. 19,825 (Apr. 17, 1995). The Order permits classification of foreign govern-

ment information, intelligence activities (including special activities), intelligence sources or methods, and foreign relations or foreign activities of the United States, including confidential sources. Exec. Order No. 12958 at § 1.5(b-d). In addition, the agency may only classify the information if "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the original classification authority is able to identify or describe the damage." *Id.* at § 1.2(a)(4). In reviewing a classification decision, the agency's affidavit is accorded substantial weight and this Circuit has required little more than a showing that the agency's rationale is logical. *Washington Post v. U.S. Dep't of Defense,* 766 F.Supp. 1, 7 (D.D.C.1991) (citing *Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980)).

In this case, the CIA has met the deferential standard for applying Exemption (b)(1) by showing a number of possible ways in which disclosure of the existence or nonexistence of records could damage national security. Because the FOIA request concerned whether the CIA has gathered intelligence on a particular foreign national, acknowledging the existence of such records could reveal intelligence sources and methods and information harmful to foreign relations. Dyer Decl. ¶¶ 9–10. Indeed, "[t]he CIA, in operating in foreign nations, engages in activities that, if disclosed, would constitute and confirm serious violations of local law."[2]

*Id.* ¶ 12. Moreover, disclosure could possibly reveal information about the CIA's intelligence interests or activities that could threaten national security. *Id.* ¶ 13. Human intelligence sources could be dissuaded from cooperating because later disclosure could constitute a serious danger to their own lives as well as their families'. *Id.* ¶ 14. Additionally, disclosure could reveal general CIA methods of information gathering (which could be magnified if a foreign intelligence service submitted FOIA requests). *Id.* ¶¶ 18–21. Because a covert interest in an individual constitutes an intelligence activity, source, or method, *see id.* ¶ 25, an official acknowledgement that the CIA maintains information concerning a covert relationship with a particular foreign national could adversely affect relations with a foreign government because that government might believe that the CIA has collected intelligence information on or recruited one of its citizens or resident aliens. *Id.* ¶ 27. These assertions sufficiently show that the agency acted appropriately in its application of Exemption (b)(1). The Court accordingly finds that the CIA has shown with reasonably specific detail that disclosing the existence or nonexistence of records pertaining to Gaitan would threaten national security, and thus it has met its burden under Executive Order 12958.[3]

Exemption (b)(3) of FOIA exempts from disclosure matters that are "specifically exempted from disclosure by statute ...

**2.** These activities, however, are often necessary to the survival of the nation. Dyer Decl. ¶ 12.

**3.** Plaintiff also argues that the CIA must release records pertaining to Gaitan because Section 3.4 of Executive Order 12958 automatically declassifies records that are more than 25 years old and have been determined to have permanent historical value. Pl.'s Cross–Mot. for Summ. J. at 12. However, the CIA has properly shown that it need not dis-

close whether such records exist in the first place because of reasons already discussed. In addition, Section 3.4(b)(1) exempts from automatic declassification information that could reveal the identity of a confidential human source, reveal information about information sources and methods, or threaten national security. Exec. Order No. 12958 § 3.4(b)(1), 60 Fed.Reg. 19,825 (Apr. 17, 1995). Therefore, the CIA is exempt from disclosing whether it maintains records concerning Gaitan under 5 U.S.C. § 552(b)(1).

provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). . "Exemption (b)(3) differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for .decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Goland v. CIA,* 607 F.2d 339, 350 (D.C.Cir.1978).

■ In that regard, CIA relies upon the National Security Act of 1947, which the Supreme Court, in *CIA v. Sims,* held constitutes a statutory exemption to disclosure under Exemption (b)(3) of the FOIA. 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). The proper standard to determine whether the statute applies to such a situation is whether the CIA demonstrates that an answer to the request can " 'reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods.' " *Gardels v. CIA,* 689 F.2d 1100, 1103 (D.C.Cir.1982) (quoting *Halperin,* 629 F.2d at 147).

The CIA has adequately shown that the information sought by Plaintiff could lead to the unauthorized disclosure of intelligence sources and methods because it seeks information related to a foreign national. Dyer Decl. ¶¶ 12–22. In addition, Wolf has offered no argument that the CIA has improperly applied Exemption (b)(3). The Court concludes that the CIA has met its burden of showing that it acted

reasonably in its judgment that the disclosure of whether it maintains records pertaining to Gaitan could constitute a threat to national security or to the information-gathering process. Thus, the CIA is additionally exempt from disclosing whether it maintains records concerning Gaitan under 5 U.S.C. § 552(b)(3).[4]

### III. The CIA did not waive the Exemptions.

Wolf argues that even if the CIA has properly invoked the FOIA exemptions in withholding the records that he seeks, the agency must nonetheless disclose the information regarding Gaitan because it has waived those exemptions. Pl.'s Cross–Mot. for Summ. J. at 3. Specifically, Wolf alleges that on April 15, 1948, former Director of the CIA, Rear Admiral Hillenkotter, publicly disclosed the fact that the CIA had records concerning Gaitan in his testimony before a Congressional Committee. Pl.'s Cross–Mot. for Summ. J., at Pl.'s Stmt. of Mat. Facts ¶ 6. The Court disagrees.

■ Even though the CIA properly classified the existence of such records under Exemptions (b)(1) and (b)(3), the exemptions may be waived if the CIA has officially acknowledged that such records exist. *Krikorian v. Dep't of State,* 984 F.2d 461, 467–68 (D.C.Cir.1993). For an item to be officially acknowledged, however, the information requested must (1) be as specific as the information previously released, (2) match the information previously disclosed, and (3) already have been made public through an official and docu-

---

4. Even if an agency is exempt from disclosing certain information, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Here, Wolf asserts that the CIA has failed to show that it has complied with this requirement.

Pl.'s Cross–Mot. for Summ. J. at 14. The CIA, however, has shown that it need not acknowledge the existence or nonexistence of records pertaining to Gaitan. Thus, there is no need to address whether such records can reasonably be segregated for nonexempt material because the very existence of the records is a classified fact.

mented disclosure. *Id.; Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C.Cir.1990). Presence in the public domain does not waive the exemption unless there is a specific document or set of documents that constitutes official acknowledgment of an issue. *See, e.g., Nat'l Sec. Archive v. CIA,* No. 99–1160 (D.D.C.2000). Thus, the critical question here is whether Admiral Hillenkotter's testimony constituted an official acknowledgment that the agency does in fact possess records pertaining to Gaitan.[5] It did not.

■ In this case, Admiral Hillenkotter was called before a special subcommittee of the House Committee on Expenditures in the Executive Department as part of an investigation of the CIA's knowledge regarding outbreaks in Colombia. Pl.'s Cross–Mot. for Summ. J., Ex. 1 at 1–3. While plaintiff alleges that Admiral Hillenkotter read directly from reports concerning Gaitan at the subcommittee meeting, Pl.'s Cross–Mot. for Summ. J. at 5, there is no indication from the transcript that the CIA director was reading from anything more than a prepared statement for the hearing. Moreover, Admiral Hillenkotter never made a specific reference in his testimony to reading from any report or other official document. Therefore, the CIA did not waive its FOIA exemptions because it did not make information public regarding Gaitan through an official and documented disclosure.

### IV. The Adequacy of the FBI Search.

■ The FBI maintains that it conducted an adequate search for records responsive to Wolf's request. FBI's Mot. for Summ. J. at 8. Wolf contends that the search described by the FBI was inadequate and cannot support a summary judgment motion. Pl.'s Opp'n to FBI's Mot. for Summ. J. at 5–6. "To win summary judgment on the adequacy of a search, the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995). Moreover, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't. of Army,* 920 F.2d 57, 68 (D.C.Cir.1990). Therefore, "the question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.*" *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994) (quoting *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984) (*Weisberg V*)). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.*

■ Although an agency does not necessarily have to search every record system, it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby,* 920 F.2d at 68. The reasonableness of an agency's search is based on what the agency knew at the conclusion of the search and not on what it speculated at the beginning. *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 28 (D.C.Cir.1998). "An agency may rely upon

---

5. Plaintiff's other evidence of "official acknowledgement" is far less persuasive. The newspaper articles merely report on what happened at the subcommittee meeting. Pl.'s Cross–Mot. for Summ. J., Ex. 2. Also, the disclaimer on the cover page of Jack Davis's article, "The Bogotazo," refutes any claim that the article was somehow an official acknowledgement that the CIA maintains records on Gaitan. Def.'s Reply to Pl.'s Opp'n to CIA's Mot. to Dismiss, Ex. 1.

affidavits to show it has conducted a reasonable search, as long as they are relatively detailed and nonconclusory and submitted in good faith." *Weisberg IV,* 705 F.2d at 1351 (citing *Goland,* 607 F.2d at 352) (internal quotations omitted). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Campbell,* 164 F.3d at 27 (citing *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C.Cir.1990)).

 Here, Wolf asserts that he found numerous FBI documents responsive to his FOIA request in his own search through the State Department files in the National Archive System. Pl.'s Opp'n to FBI's Mot. for Summ. J. at 4–5. As evidence, he cites to a July 26, 1946 memorandum in which FBI Legal Attache Edwin O. Johnson indicated to FBI Director Hoover that Gaitan's individual case file was being closed and his subsequent activities would be reported in a file entitled "POLITICAL SITUATION IN COLOMBIA—FOREIGN POLITICAL MATTER." *Id.* at 5 (citing Hodes Decl., Ex. G at 14). Wolf contends that a reasonable search would have included an inspection of this file. The Court agrees. There is no evidence of a search of this file by the FBI. Hodes Decl. ¶¶ 8–9. Because an agency must search record systems "that are likely to turn up the information requested," *Oglesby,* 920 F.2d at 68, the FBI should have searched the "POLITICAL SITUATION" file. Therefore, summary judgment for the agency is not appropriate due to the inadequacy of the search.

In light of the Court's finding that the FBI must enlarge the scope of its search to include all record systems that are likely to yield responsive records such that the "POLITICAL SITUATION" file would be included in the search, the Court declines to examine the application of the exemptions to the previously produced materials.

Rather, the Court orders the FBI to submit a consolidated Vaughn index at the conclusion of its follow-up search and processing of documents.

### *ORDER*

For the reasons stated above, it is on this 14th day of July, 2004, hereby

ORDERED that Defendant CIA's motion for summary judgment [# 6] is GRANTED;

ORDERED that Plaintiff Wolf's cross-motion for summary judgment [# 11] against the CIA DENIED;

ORDERED that Defendant FBI's motion for summary judgment [# 15] is DENIED.

SO ORDERED.