PHILADELPHIA NEWSPAPERS, INC., and Daniel Rubin, Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

No. Civ.A. 96–2722 JR.

United States District Court, District of Columbia.

Aug. 6, 1999.

Stephen H. Glickman, Eleanor H. Smith, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for plaintiffs.

Brian J. Sonfield, Assistant U.S. Attorney, Washington, DC, for defendant.

### MEMORANDUM OPINION

ROBERTSON, District Judge.

In this action brought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, plaintiffs Philadelphia Newspapers, Inc. and Daniel Rubin seek access to the results of a government audit of the Medicare billing practices of Clinical Practices of the University of Pennsylvania (CPUP). Defendant Department of Health and Human Services (HHS) is withholding 25 documents, in part or in full, under one or more of FOIA Exemptions 4, 5, 6, or 7, 5 U.S.C. § 552(b)(4), (5), (6), (7)(A), and (7)(C), and moves for summary judgment on the grounds that it has properly claimed the exemptions. This memorandum explains my rulings that HHS has properly invoked Exemptions 6 and 7(C), relating to privacy interests, but has improperly invoked Exemptions 4 and 7(A), relating to commercial and financial information and records compiled for law enforcement purposes. Also, HHS's Exemption 5 claim of work-product protection or attorney-client privilege will not be sustained with respect to documents that have been disclosed to CPUP.

### FACTS AND PROCEDURAL HISTORY

In the spring of 1995, an audit was conducted of Clinical Practices of the University of Pennsylvania (CPUP), the organization through which faculty physicians at the University of Pennsylvania practice clinical medicine. The audit was performed jointly by the Office of the Inspector General (OIG) of the Department of Health and Human Services (HHS) and the United States Attorney's Office for the Eastern District of Pennsylvania, because the government was exploring possible violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* The audit resulted in claims that were ultimately settled for $30 million. Following the settlement, OIG created a national initiative—a project called the Physicians at Teaching Hospitals (PATH)—to audit other teaching hospitals. The project is ongoing.

In May 1996, plaintiffs filed a FOIA request for the entire OIG file of the CPUP audit. HHS denied the request. Plaintiffs filed this lawsuit in December 1996 after HHS failed to respond in a timely manner to plaintiffs' administrative appeal. In March 1997, HHS moved for summary judgment, and plaintiffs filed a counter-motion to compel filing of a *Vaughn* index. I denied both motions on December 16, 1997.

After subsequent negotiations between the parties and a conference with the Court, plaintiffs narrowed their request, *see* Pl.Exh. 34, and HHS disclosed more documents. HHS disclosed 140 pages of documents detailing the Medicare laws and audit standards applied in the audit. HHS then filed an unsworn "Index of Withheld Documents" listing 26 documents within plaintiffs' narrowed request that were still being withheld, Pl.Exh. 32, and a revised "Index of Withheld Documents" that referred to two more partially redacted documents, Pl. Exh. 33. Plaintiffs subsequently decided not to pursue three of the 28 withheld documents (Documents 4–6), Pl. Exh. 34. The total number of documents at issue was thus reduced to 25.

HHS renewed its motion for summary judgment on October 21, 1998, attaching the supplemental declarations of Assistant United States Attorney Margaret Hutchinson (2 declarations, executed on July 28, 1998 and October 21, 1998) and OIG Audit

Manager Eugene Berti (executed on October 21, 1998), and arguing that each of the 25 still-withheld documents is exempt from release under one or more of FOIA Exemptions 4, 5, 6, or 7. Plaintiffs filed their cross-motion for summary judgment on December 18, 1998.

## ANALYSIS

### Adequacy of Vaughn index

■ Plaintiffs' assertion that HHS has not submitted an adequate *Vaughn* index is rejected. "[I]t is the function, not the form, of the [*Vaughn*] index that is important." *Keys v. DOJ*, 830 F.2d 337, 349 (D.C.Cir.1987). An adequate *Vaughn* index

> "serves three functions: it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."

*Keys,* 830 F.2d at 349 (citation omitted). The first sworn Hutchinson declaration describes each document, and the list of documents appended to the declaration identifies the FOIA exemption(s) asserted by HHS. Together, they adequately fulfill the three functions of the *Vaughn* index described above.

### Exemptions 4 and 7(A)

Exemption 4 protects "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 7(A) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). HHS has invoked Exemptions 4 and 7(A) to withhold its statistical analyses, which exposed errors in CPUP's Medicare billing, and details of its settlement with CPUP. HHS justifies its withholding of Documents 1–3, 7–21, 25–26, and 28 on the grounds that revealing the statistical analyses of the CPUP error rate would interfere with enforcement proceedings by inhibiting the settlement of claims against other hospitals in the PATH project. According to Margaret Hutchinson's first declaration, other teaching hospitals use the CPUP audit as a benchmark of Medicare billing error. She says that, when audited, other hospitals indicate a resistance to any settlement that might make them appear to have a higher error rate than CPUP's. Hutchinson Decl. I ¶¶ 16–17. HHS wants to keep the CPUP rate confidential because of a belief that "other PATH project institutions would strongly resist any settlement of claims against them based on a higher error rate than CPUP's, even if the evidence warranted such a settlement." Hutchinson Decl. I ¶ 17. The slightly different rationale for withholding Documents 23 and 24[1] is that their release would disclose where the government pressed its case (and where it did not) and would increase other hospitals' resistance to settlement in areas where the government's evidence is not as strong as in the CPUP case.

■ Responding to the Exemption 4 claim, plaintiffs first object that the information was not "obtained from a person," because it was generated by the government. *See, e.g., Grumman Aircraft Engineering Corp. v. Renegotiation Board,* 425 F.2d 578, 582 (D.C.Cir.1970). HHS concedes that it created most of the documents, but asserts that they were nevertheless "obtained from" CPUP because the audit of CPUP records was based on raw data obtained from CPUP. That argument does not work. This is not like *Gulf & Western Indus. v. United States,* where the information sought was a *government*

---

1. Document 23 is a letter from a government lawyer to CPUP stating the strength of the government's evidence on certain issues. Document 24 is a chart showing the partic- ipation of certain doctors in certain audited services with notes of examples of errors based on the chart.

contractor's "actual costs for units produced," "actual scrap rates," "break-even point calculations," and "actual cost data," 615 F.2d 527, 530 (D.C.Cir.1979) (emphasis added), or *Daniels Mfg. Corp. v. United States Dep't of Defense,* where the information sought was "test and records submitted to the Naval Avionics Center ... by Astro Tool Co. and/or Buchanan–Elastimold Division of Amerace Corporation during its 1984 requalification," No. 85–291–Civ–T–10 at 1 (D.M.D.Fla. June 3, 1986) (Def.Exh.4). An audit is not simply a summary or reformulation of information supplied by a source outside the government. It also involves analysis, and the analysis was prepared by the government. The HHS charts were not "obtained from a person," and they may not be withheld under Exemption 4. It is unnecessary to decide the question of whether the charts are "confidential."

■ The HHS argument for withholding the same documents under Exemption 7(A) is that they were compiled for law enforcement purposes and that their disclosure would interfere with law enforcement proceedings. Plaintiffs respond, first, that the documents were not compiled for law enforcement purposes but as part of a routine Medicare Program compliance audit, conducted by the Office of Audit Services (OAS), an administrative— not law enforcement—arm of the OIG. HHS successfully refutes those assertions in sworn declarations. The CPUP audit was not routine, but rather the result of a specific complaint, Hartwig Decl. ¶ 3. The first OIG division involved in the investigation was not OAS, but rather the Office of Investigations, which stayed involved in the case through settlement. OAS became involved only at the request of the Office of Investigations. *Id.;* Berti Decl. ¶ 4; Vella Decl. ¶¶ 3–4. Plaintiff correctly asserts that "for agencies performing both law enforcement and administrative functions, only investigations which focus directly on specifically alleged illegal acts are covered by Exemption 7." *Reed v. NLRB,* 927 F.2d 1249, 1252 (D.C.Cir.1991) (quotations and citations omitted). But

this is just such a case. From the beginning, the audit focused on specific suspected violations of Medicare billing requirements, and involved both the Civil and Criminal Divisions of the U.S. Attorney's Office. Hartwig Decl. ¶ 3, Hutchinson Decl. ¶¶ 3–4, Berti Decl. ¶ 4, Vella Decl. ¶¶ 3–4.

The HHS argument for the second necessary element of Exemption 7 withholding, that disclosure of the disputed documents could "reasonably be expected to interfere with law enforcement proceedings" does not succeed. The argument is that the release of the CPUP audit statistics would impede the settlement of claims against *other* hospitals. The case upon which HHS relies, *Cucci v. DEA,* 871 F.Supp. 508 (D.D.C.1994), stands for the proposition that Exemption 7(A) protects against disclosure that would harm future proceedings even where a law enforcement proceeding has ended. That rule applies only to future proceedings in an *ongoing* investigation, however. The CPUP investigation is over. The release of documents could not interfere with the CPUP investigation. *See Center for Auto Safety v. Department of Justice,* 576 F.Supp. 739, 751, 753, (D.D.C.1983), where Judge Hogan rejected an agency's use of Exemption 7(A) to withhold documents relating to a consent decree, namely "draft settlement agreements, internal memoranda and notes discussing those agreements, and correspondence between the [agency] and its adversary with respect to the consent decree negotiations," because the agency "ha[d] not met its burden of showing that the documents were collected or are being used in an ongoing investigation." Because the documents at issue in this case cannot reasonably be expected to interfere with law enforcement proceedings in an ongoing case, they may not be withheld under Exemption 7(A).

*Exemption 5*

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5

U.S.C. § 552(b)(5). The exemption has been construed to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). HHS has invoked Exemption 5 to withhold, in part or in full, 22 documents.[2]

A threshold question is whether the records qualify as "inter-agency or intra-agency memorandums or letters." Plaintiffs' assertion that documents 21 and 12 do not satisfy this requirement is rejected.[3] *See Durns v. Bureau of Prisons*, 804 F.2d 701, 704 n. 5 (D.C.Cir.1986), *vacated and remanded on other grounds*, 486 U.S. 1029, 108 S.Ct. 2010, 100 L.Ed.2d 598 (1988) (whether documents are "intra-agency" depends on "a functional rather than a literal test"). Document 21 was created partly by CPUP and partly by HHS and AUSA Hutchinson, but HHS' invocation of Exemption 5 extends only to the portions created by the government. Similarly, for Document 12, HHS has asserted Exemption 5 only for the handwritten comments created by HHS and AUSA Hutchinson and by Xact, the HHS Medicare contractor who was acting as a consultant to HHS.

■ Plaintiff's more persuasive argument is that neither the attorney-client privilege nor the work product doctrine applies to the CPUP audit results because HHS always intended to share—and in fact did share—the audit results with the target of its investigation.[4] Any documents disclosed to CPUP may not be withheld under Exemption 5.

*Exemptions 6 and 7(C)*

HHS invokes Exemptions 6 and 7(C) to protect the names of CPUP physicians and the names and identification numbers of Medicare beneficiaries in 11 documents (Documents 10, 11, 12, 14, 16, 18, 19, 20, 24, 26, 27). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) provides that information gathered for law enforcement purposes need not be disclosed if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

■ Here, the HHS position passes the balancing test—the individual's privacy interest vs. the public interest in disclosure—articulated in *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The concept of public interest in Exemption 6 or 7(C) inquiries is limited to the "core purpose" for which Congress enacted the FOIA. *Id.* at 773, 109 S.Ct. 1468. The plaintiffs' claim of public interest in "shed[ding] much needed-light onto the propriety of the PATH initiative," and determining "whether the Department has overreached with the PATH audits," Pl.St. Facts 91–92, pays lip service to the *Reporters Committee* formulation of a "public interest" reason, *i.e.* to "shed light on an agency's performance of its statutory duties," *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. 1468, but fails to overcome the obvious and strong privacy interests of doctors who were investigated for—but not charged with—Medicare fraud.

■ Plaintiffs' assertion that Medicare beneficiaries' identification numbers should be disclosed, because they do not identify any particular person, is also rejected.

---

**2.** Documents 1, 2, and 3 withheld under both the attorney/client privilege and work product doctrines and documents 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, and 28 are withheld under only the work product doctrine. All documents are withheld in their entirety, except for Documents 12 and 21.

**3.** Document 16 is not withheld under Exemption 5 so plaintiffs' assertion that it is not inter– or intra-agency is irrelevant.

**4.** Plaintiff's assertion that the work product doctrine does not shield the audit records because they were created in a routine audit, not in anticipation of litigation is rejected. This was not a routine audit, *see supra* at 6–7.

The Medicare beneficiary number is typically a person's social security number, Berti Decl. ¶ 25. A social security number could identify an individual, and may therefore be withheld. *See, e.g., Stauss v. IRS,* 516 F.Supp. 1218, 1221–1222 (D.D.C. 1981).

An appropriate order accompanies this memorandum.

### *ORDER*

Upon a review of the record, and for the reasons stated in the accompanying memorandum, it is this 6th day of August 1999.

**ORDERED** that defendant's motion for summary judgment [# 43] is **granted in part and denied in part.** It is

**FURTHER ORDERED** that plaintiff's motion for summary judgment [# 49] is **granted in part and denied in part.** And it is

**FURTHER ORDERED** that defendant conduct a further review of the 25 documents it has withheld and release additional documents, or portions of documents, in accordance with the rulings set forth in the accompanying memorandum.