The **NEW YORK TIMES COMPANY**, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF LABOR**, Defendant.

No. 03 Civ.8334(SAS).

United States District Court, S.D. New York.

July 29, 2004.

David E. McCraw, The New York Times Company, Legal Department, New York City, for Plaintiff.

David J. Kennedy, Assistant United States Attorney, United States Attorney's Office, Southern District of New York, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

The New York Times Company (the "Times") filed this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel the Department of Labor's Occupational Safety and health Administration ("OSHA") to disclose Lost Work Day Illness and Injury ("LWDII") rates for 13,000 work sites. The Department of Labor ("DOL") now moves to dismiss the complaint for lack of subject matter jurisdiction, arguing that the Times failed to exhaust its administrative remedies. In the alternative, the DOL seeks summary judgment. The Times cross-moves for summary judgment.

## I. FACTUAL BACKGROUND

### A. OSHA and the LWDII Rate

The facts giving rise to this action are undisputed. The Occupational Safety and

Health Act (the "Act"), 29 U.S.C. § 651 *et seq.*, is intended to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions ..." 29 U.S.C. § 651(b). OSHA is charged with carrying out these purposes. Accordingly, OSHA provides information and guidance to employers about how to initiate and improve safety and health programs, and inspects workplaces to find, and remedy, violations of the Act. *See* 29 U.S.C. §§ 656, 657.

As part of its efforts to identify workplaces with particularly high injury and illness rates, OSHA collects data from approximately 80,000 worksites in selected high hazard industries. *See* Declaration of Joseph Dubois, Director of the Office of Statistical Analysis of OSHA ("Dubois Decl."), Ex. E to the Joint Statement of Uncontested Material Facts Pursuant to Local Rule 56.1 ("56.1 Stmt."), ¶ 2. The surveyed worksites are required to complete and return a form, or enter information on OSHA's website, including (1) the total number of hours worked by all employees, and (2) data from illness and injury records. *See* Declaration of Miriam McD. Miller, Co–Counsel for Administrative Law, Office of the Solicitor, U.S. Department of Labor ("Miller Decl."), ¶ 8; OSHA Occupational Injury and Illness Data Form, 2000, Ex. 1 to the Miller Decl.

OSHA uses the information it collects to calculate the annual LWDII rate for each reporting workplace. The rate is based on the following formula:

$$LWDII = (N/EH) \times 200,000$$

where N is the total number of incidents of lost workday injuries and illnesses, and EH is the total number of hours worked by all employees. The ratio (N/EH) is multiplied by 200,000 to convert the rate to a rate per hundred full-time employees, on the assumption that a full-time employee works 2000 hours per year. *See* 56.1 Stmt. ¶ 8; Miller Decl. ¶ 4.

Based on data received for the year 2000, OSHA identified approximately 13,000 workplaces with LWDII rates at or above 8.0, which is "considerably greater than the national average." Memorandum of Law in Support of the United States' Motion to Dismiss the Complaint Or, in the Alternative, for Summary Judgment ("Gov't Mem.") at 5. Thereafter, OSHA sent letters to all 13,000 workplaces, notifying them that their LWDII rates were significantly elevated, and encouraging them to take steps to reduce those rates.[1]

Notably, the names and addresses of the 13,000 workplaces with high LWDII rates are available on OSHA's website. *See* Reply Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint Or, in the Alternative, for Summary Judgment ("Gov't Reply") at 2.[2] Moreover, OSHA regulations require employers to post, at the work site, the total number of incidents of lost workday injuries and illnesses. *See* Gov't Mem. at 17 (citing 29 C.F.R. §§ 1904.32(a)(4), 1904.35(b)(2)). Thus, using the LWDII rate and information regarding lost workday injuries and illnesses, theoretically the formula can be "reverse engineered" to calculate EH, total

---

1. The data for the year 2000 was collected in 2001, and the 13,000 employers with an LWDII rate of 8.0 or above were identified in February, 2002. *See* Miller Decl. ¶ 10.

2. Specifically, according to the Government, "Nothing prevents the Times from going to OSHA's website, obtaining the names and addresses of the 13,000 workplaces with high

LDWII rates, and obtaining this information itself directly from the companies in question." Gov't Reply at 2. I note that the Court's clerks expended considerable time searching OSHA's website for these names and addresses, but were unable to locate them. This is likely because OSHA's website is extraordinarily difficult to navigate. *See* www.osha.gov.

hours worked by all employees. For the year 2000, this information was not publicly available. *See* Gov't Reply at 8. However, beginning in February, 2003, OSHA required employers to post, at their work sites, the total number of employee hours worked. *See id.;* OSHA 300 form, Ex. B to the Supplemental Declaration of Miriam McD. Miller ("Supp. Miller Decl.").

### B. The Times Request

On October 1, 2002, David Barstow, a Times reporter, filed a FOIA request with the DOL. The request sought three types of information: (1) the LWDII rates for all worksites that received a high-rate notification from OSHA in 2002; (2) the numerical ranking of work sites with high LWDII rates; and (3) the LWDII rate for Ransom Industries, L.P. ("Ransom"). *See* 56.1 Stmt. ¶ 1; The Times's 10/1/02 FOIA request, Ex. 1 to the 56.1 Stmt. By letter dated October 3, 2002, the DOL denied the request. *See* 56.1 Stmt. ¶ 2; 10/3/02 letter from DOL to Barstow, Ex. 2 to the 56.1 Stmt.

On November 12, 2002, Barstow appealed the denial to the Solicitor of Labor. *See* 56.1 Stmt. ¶ 3; 11/12/02 letter from Barstow to Solicitor of Labor, Ex. C to the 56.1 Stmt. Eight months later, on July 10, 2003, the DOL responded to Barstow's appeal. The DOL informed Barstow that,

> [T]he LWDDII rate for each establishment is commercial information that may be protected by Exemption 4 [of FOIA]. As a result, OSHA is required to provide the 13,000 submitters with an opportunity to file objection to disclosure before a final determination can be

made. Therefore, before we can take any further action with regard to this matter we need to know whether you wish to pursue it and if so, how you wish to proceed. My office is willing to work with you and OSHA to sample a reasonable number of random establishments or to contact trade associations.

\*      \*      \*      \*      \*      \*

> While we remain willing to work with you to attempt to resolve your request, the Freedom of Information Act provides for judicial review of administrative decisions. Suit may be brought in the district court of the United States in the jurisdiction in which the complainant resides, has his principal place of business, or in which the agency records are maintained, or in the District of Columbia. 5 U.S.C. ¶ 552(a)(4)(B). However, should you have any questions concerning this appeal determination or wish to work with the Department to sample establishments, you may contact Joe Plick of my staff . . .

7/10/03 letter from DOL to Barstow, Ex. D to the 56.1 Stmt.[3] Thereafter, the Times filed this action against the DOL, seeking to compel production of the LWDII rates for the 13,000 worksites that received OSHA notifications in 2002 as a result of their rates.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

### A.  Applicable Law

Federal courts have jurisdiction over FOIA requests "to enjoin the agency from

---

**3.** The DOL's July, 2003 response also informed Barstow that the DOL does not numerically rank workplaces based on their LWDII rates, and that therefore, such a ranking was not available. Accordingly, the Times ultimately withdrew its request for the numerical ranking of worksites with high LWDII rates. *See* 56.1 Stmt. ¶ 6. On February 20,

2004, and in response to the Times's third request, the DOL provided the Times with the LWDII rate for Ransom Industries. *See id.* ¶ 7. Thus, the Times's only outstanding request is for the LWDII rates for the 13,000 worksites that received a notice from OSHA in 2002.

withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This jurisdiction "is dependent upon a showing that an agency has (1) 'improperly;' (2) 'withheld;' (3) 'agency records.'" *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).

█ Prior to judicial review, the requester must exhaust her administrative remedies. "The exhaustion requirement ... allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 61 (D.C.Cir.1990). *See also Ruotolo v. Department of Justice*, 53 F.3d 4, 8 (2d Cir.1995) ("The denial of requested information must be appealed to the head of an agency[.]"); *Greene v. FBI*, No. 92 Civ. 3401, 1993 WL 288132, at *2 (S.D.N.Y.1993) (Sotomayor, J.).

Pursuant to the FOIA statutory scheme, an agency that receives a FOIA request must,

(i) determine within ten days (excepting Saturdays, Sundays, and legal public holidays) ... whether to comply with such request and [ ] immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i), (ii). "In certain circumstances, an agency may grant itself an extension of the statutory ... time period 'by written notice of the person making such request setting forth the reasons for such extension and the date on which determination is expected to be dispatched.'" *Greene*, 1993 WL 288132, at *3 (quoting 5 U.S.C. § 552(a)(6)(B)). "If the agency has not responded within the statutory time limits," either by issuing an appealable determination or an extension, "then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit," *Oglesby*, 920 F.2d at 62, because she is deemed to have constructively exhausted her administrative remedies, *see Greene*, 1993 WL 288132, at *2.

█ However, where an agency responds to a FOIA request late, but before suit is filed, actual exhaustion must be pursued before the requester may seek judicial relief. "[A]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed. The ten-day constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request. But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." *Oglesby*, 920 F.2d at 63. *See also Pineiro v. Pension Benefit Guaranty Corp.*, No. 96 Civ. 7392, 1997 WL 739581, at *13 (S.D.N.Y. Nov. 26, 1997).

**B. Discussion**

The DOL submits that the Times has not exhausted its administrative remedies. According to the DOL, it never made a "final determination" as to whether to release the LWDII rates. Instead, in its November 12, 2002 response to the Times's appeal, the DOL,

notified the Times that the LWDII rate is commercial information that may be protected by FOIA Exemption 4, such that OSHA was required . . . to provide each of the 13,000 submitters with an opportunity to object to the disclosure of its LWDII rate. The Solicitor's Office explained that it was extraordinarily burdensome to provide predisclosure notification to 13,000 companies. As the Times' request was so onerous, the Solicitor's Office proposed a number of alternatives, including an agreement to sample a reasonable number of establishments or to contact trade associations.

Gov't Mem. at 10–11 (citations and quotation marks omitted). The DOL contends that because it neither specifically granted nor denied the Times's request, the Times failed to exhaust its administrative remedies. Furthermore, the DOL argues that the Times had an obligation, before filing suit, to engage in "discussions" with the DOL "to resolve the matter on mutually satisfactory terms." *Id.*

■ The DOL's argument is misplaced. As an initial matter, the requirement that FOIA requesters exhaust their administrative remedies means that following an initial denial, the requester must appeal the decision to the "head of [the] agency" before seeking judicial intervention. *Ruotolo,* 53 F.3d at 8. There is no question that following the DOL's initial denial of its request, the Times appealed to the Solicitor of the Department of Labor.

Having undertaken this appeal and not received the documents it requested, the Times has no other individual or entity, other than the Court, from which it can seek relief. Therefore, the Times has exhausted its administrative remedies.

■ Moreover, the DOL's argument is illogical. The Court lacks jurisdiction, the DOL claims, because the DOL neither granted nor denied the Times's request. Instead, the DOL informed the Times that the request would require the DOL to engage in a notification process, and that the process was too burdensome for the DOL to undertake. *See* 7/10/03 letter from DOL to Barstow at 3 ("[A]pproximately 30,290 staff hours, or approximately 15 work-years of effort will have to be expended to respond to your request as currently written."). Though not an explicit denial of the Times's request, this response was, for all practical purposes, a denial. In effect, the DOL told the Times, "We may have an obligation to give you these documents, but the process of determining that is too hard, and we are not going to figure out a way to do it." [4] The fact that the DOL invited the Times to engage in negotiations with the DOL and narrow its request is irrelevant—the DOL cannot avoid court intervention by neither granting no denying a request, but rather seeking to alter it. The DOL's offers to negotiate and work with the Times do not change the fact that the DOL refused to provide the Times with the information it sought, and the Times has been waiting for that information for close to two years.[5]

---

4. The DOL's failure to explicitly grant or deny the Times's request is especially troubling because its response to the Times's appeal was more than seven months late. Pursuant to section 552(a)(6)(A)(ii) of Title 5, the DOL was required to respond to the Times's November 12, 2002 appeal within twenty business days. Yet, the DOL did not respond until July 10, 2003.

5. The DOL's argument is somewhat puzzling given that at the end of its July 10, 2003 letter, the DOL emphasized that although it was willing to continue "negotiating" with the Times, the Times was free to file a lawsuit to compel production of the requested information: "Although we remain willing to work with you to attempt to resolve your request, the Freedom of Information Act provides for

Because the Times has fully exhausted its administrative remedies this Court with jurisdiction to hear its request pursuant to section 552(a)(4)(B) of Title 5 of the United States Code.

## III. SUMMARY JUDGMENT

### A. Applicable Law

#### 1. Summary Judgment Standard

Summary judgment is appropriate if the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'" *Overton v. New York State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir.2004) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A fact is material for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The movant has the burden of demonstrating that no genuine issue of material fact exists. *See Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 84 (2d Cir.2004). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and it must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell*, 364 F.3d at 84 (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)). In determining whether a genuine issue of material fact exists, the court must

judicial review of administrative decisions

construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004).

#### 2. The FOIA Exemption 4

Exemption 4 to the FOIA provides that an agency is not required to disclose "trade secrets and commercial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). The DOL's regulations require it to "provide a business submitter with notice of a FOIA request whenever" the DOL "has reason to believe that disclosure of the information could reasonably be expected to cause substantial competitive harm." 29 C.F.R. § 70.26(d)(2)(ii). After providing notice, the DOL must "afford a business submitter a reasonable period within which to provide ... a detailed statement of any objection to disclosure ... [which] shall specify all grounds for withholding any of the information under Exemption 4 ..." 29 C.F.R. § 70.26(e).

The district courts must conduct a *de novo* review of an agency's decision to withhold records. *See* 5 U.S.C. § 552(a)(4)(B). However, as the Third Circuit noted in *OSHA Data/CIH, Inc. v. United States Department of Labor*, it is unclear

what standard of review a district court would employ in evaluating the reasonableness of the agency's *intermediate* decision to pursue predisclosure notification. Is this a case of an agency interpreting its own regulations (here, the predisclosure regulations) that might entail *Chevron* deference? Or is it a situation where the courts review an adverse agency action for arbitrariness or caprice as provided for by the Administrative Procedure Act? Or does the *de novo* FOIA standard apply?

...." 7/10/03 letter from DOL to Barstow.

220 F.3d 153, 165 n. 29 (3d Cir.2000)(emphasis original, citations omitted).[6]

### B. Discussion [7]

#### 1. Standard of Review

I have already found that the DOL withheld documents from the Times because the DOL concluded that the process of providing predisclousre notification was too burdensome. *See supra,* Part II.B. As a result, the Court is reviewing the DOL's decision to *withhold* documents, rather than an intermediate decision to pursue predisclosure notification. Thus, the Court must conduct a *de novo* review of that decision. *See* 5 U.S.C. § 552(a)(4)(B).

#### 2. Releasing the LWDII Rates Is Not Equivalent to Releasing Confidential Information

■ The DOL argues that the LWDII rates the Times requested may be "commercial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). The Times counters that the rates were neither "obtained," nor "confidential." Because I agree that the requested rates are not confidential, I need not determine whether they were "obtained." [8]

According to the Government, "[r]elease of the LWDII rate it tantamount to release of confidential commercial informa-

tion, specifically, the number of employee hours worked, because this number can be easily ascertained from the LWDII rate." Gov't Mem. at 16. This argument is premised on the DOL's claim that using "publicly posted" information regarding incidents of lost workday injuries and illnesses (denoted by "N" in the LWDII formula), the LWDII can be "reverse-engineered" to reveal EH, or employee hours. *See id.* at 17.

I am not convinced that employee hours can be "easily ascertained" from the LWDII rate. Although employers are required to post information relating to incidents of lost workday injuries and illnesses, contrary to the DOL's argument, these posting are not "public." A review of the OSHA form that employers are required to complete and post reveals that the information need only be posted for *one month,* "in the place or places where notices to employees are customarily posted." Instruction III of the OSHA 200 form, attached as Ex. A to the Supp. Miller Decl. As the DOL argued to the *OSHA Data* court, and that court agreed, "the posting of an annual injury and illness summary at the work site itself is a limited disclosure to a limited audience, a disclosure which is *surely insufficient to render the data publicly available." OSHA Data,* 220 F.3d at 163 n. 25 (citing DOL Brief to the *OSHA Data* court at 40–41) (emphasis added).[9]

---

**6.** The Third Circuit reached no conclusion regarding the appropriate standard of review because it concluded that the agency did not error under any standard of review. *See OSHA Data,* 220 F.3d at 165 n. 29.

**7.** The parties agree that there are no disputed issues of fact, and that if the Court has jurisdiction over this matter, summary judgment is appropriate. *See* Gov't Mem. at 14; The New York Times's Memorandum of Law in Support of Cross–Motion for Summary Judgment at 8.

**8.** I note, however, that the only circuit court to address the issue determined that LWDII

rates are "obtained" from a person. *See OSHA Data,* 220 F.3d at 162 n. 23 (Because "the LWDII rate is merely a ratio calculated from individual components all of which are obtained from employers, we find that the LWDII rate, like the other information sought by OSHA Data, is obtained from a person.' "). Similarly, in *Philadelphia Newspapers, Inc. v. HHS,* 69 F.Supp.2d 63, 67 (D.D.C.1999), the court held that agency summaries and reformulations of raw data are "obtained" from an entity.

**9.** The fact that the DOL previously argued to another court that limited postings by employers are not public postings significantly

That is particularly true where the posting is for a very short time.[10] Thus, because the LWDII rates cannot easily be "reverse engineered," public release of the LWDII rates is not equivalent to publicly releasing the employee hours underlying those rates.

Moreover, even if it were possible to calculate employee hours based on LWDII rates, the year 2000 employee hours likely do not constitute "confidential commercial information." According to OSHA, disclosure of employee hours "can cause substantial competitive injury." Gov't Mem. at 17. This argument is not convincing for at least two reasons. *First*, although employee hours were not posted in the year 2000, OSHA now requires employers to post hours in the same way employers must post illness and injury rates. *See* Gov't Reply at 8; Supp. Miller Decl. ¶ 7 (explaining that as of 2003, employers must post the OSHA 300 form, which lists illnesses and injuries as well as employee hours). Thus, OSHA no longer regards employee hours as "confidential commercial information," and employers have no expectation of a competitive advantage based on their ability to keep the hours confidential.

*Second*, even if employers relied on the secrecy of employee hours to maintain a competitive advantage in 2000, there is no reason to believe that releasing those hours four years later would cause competitive injury; the employee hours for the year 2000 are nothing more than outdated information. This is particularly true given that contemporaneous information regarding hours *is* available at worksites.[11]

These circumstances distinguish this case from *OSHA Data*, upon which the DOL heavily relies.[12] In *OSHA Data*, the plaintiff sought LWDII rates for certain worksites for the year 1995. The DOL informed OSHA Data that it was required to undertake a notification process to determine whether the requested information was protected by Exemption 4, and sought to shift the cost of that process to OSHA Data. In affirming the district court's conclusion that OSHA Data was required to pay the cost of the notification procedure, the Third Circuit held that the DOL acted reasonably in concluding that employers might view the LWDII rates as confidential because their release "*could* lead to substantial competitive harm." *OSHA Data*, 220 F.3d at 167 (emphasis original). But at the time *OSHA Data* was decided, employers were not required to post employee hours, so there was at least a possibility that LWDII rates could be reverse engineered to determine confidential information.[13] That risk no longer

---

undermines the DOL's effort to make precisely the opposite argument now.

**10.** Because the injury and illness summaries related to the LWDII rates the Times seeks were posted for only a one month period that ended several years ago, it is difficult to believe that the general public could track down those summaries years later and use them to reverse engineer outdated LWDII rates.

**11.** The DOL refers to the Times's request for the 2000 LWDII rates as "puzzling" because in 2000, employee hours were confidential, but more contemporaneous hours are not confidential. The DOL suggests that the Times should request the LDWII rates for 2003. *See* Gov't Reply at 8. This argument is

unavailing: the Times is free to make whatever FOIA request it chooses, and presumably the Times has its own reasons for seeking the 2000 LWDII rates.

**12.** *See also* Gov't Mem. at 17 (citing *American Trucking Assocs. v. Reich*, 955 F.Supp. 4 (D.D.C.1997); *Westinghouse Elec. Corp. v. Schlesinger*, 392 F.Supp. 1246 (E.D.Va.1974)). The *OSHA Data* court cited *American Trucking* and *Westinghouse* in reaching its conclusion, and this case is distinguishable from both of those cases for the same reason it is distinguishable from *OSHA Data*.

**13.** Of course, that possibility was remote because, as I have discussed, the number of illnesses and injuries for a given employer is

exists because employee hours are no longer confidential.

### 3. The Majority of Employers that Have Received Predisclosure Notifications Do Not View LWDII Rates as Confidential

Because the Times made a separate request for Ransom Industry's LWDII rate, the DOL sent Ransom a predisclosure notification inquiring into whether Ransom objected to disclosure of its LWDII rate for the year 2000 It did not. Therefore, Ransom's LWDII rate was disclosed to the Times. Though Ransom's response cannot speak for all 13,000 employers for whom the Times requested LWDII rates, it does weaken the DOL's argument that disclosing the LDWII rates is tantamount to revealing confidential commercial information.

The DOL argues that other newspapers have requested LWDII rates for certain industries, and one or two employers in those industries objected. Specifically, in 1999, the Washington Post requested LWDII rates for certain poultry processing companies. Two companies objected. *See* Miller Decl. ¶ 19. But the Washington Post's request occurred before employers were required to post employee hours, and therefore the employers may have had a legitimate concern that release of the LWDII could lead to disclosure of employee hours. More importantly, the majority of poultry processing employers apparently did not view the LWDII rates as confidential.

In 2003, the Detroit Free Press requested LWDII rates for certain automotive assembly plants. Like the Times's request, the Detroit Free Press's request came after the DOL required employers to post employee hours, but concerned a time period when employee hours were not posted. Only two automakers objected to

disclosure of the LWDII rates. *See id.* ¶ 21.

It appears, then, that the vast majority of employers who have received predisclosure notifications regarding LWDII rates do not view the rates as confidential. Moreover, the fact that a limited number of employers may object to disclosure of LWDII rates does not mean that Exemption 4 applies to the rates; it merely means that following the objections, the DOL had to determine whether the objections had merit. I note that the DOL does not claim that upon receiving a few objections from poultry processors and automakers, it denied the Washington Post's and Detroit Free Press's requests.

In sum, I conclude that Exemption 4 does not apply to the LWDII rates the Times requested. Release of the rates is not tantamount to releasing confidential commercial information because there is little, if any, possibility that the rates can be "reverse-engineered." And even if it is possible to use the rates to determine employee hours, the DOL has failed to persuade the Court that employee hours for the year 2000 constitute confidential commercial information.

## IV. CONCLUSION

For the foregoing reasons, the DOL's motion for summary judgment is denied, and the Times's cross-motion for summary judgment is granted. The DOL is ordered to provide the Times with the LWDII rates for the 13,000 employers that received notices from the DOL in 2002 as a result of exceptionally high rates. The Clerk of the Court is directed to close these motions [docket # s 8, 11] and this case.

available to a limited number of people only

for a one month period.

SO ORDERED.